**Michael P. PRUDDEN, Plaintiff,**

v.

**E.J. BRACH CORPORATION, and Teamster's Local Union No. 738, Defendants.**

**No. 96 C 1981.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 28, 1996.

---

Carey M. Stein, Ashman & Stein, Chicago, IL, Michael Gregory Logan, Chicago, IL, for plaintiff.

Gregory John Malovance, Joseph James Torres, Adam S. Kosh, Winston & Strawn, Chicago, IL, for E.J. Brach Corporation.

Gregory John Malovance, Joseph James Torres, Adam S. Kosh, Patricia Anne Collins, Barry Milton Bennett, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, for Local No. 738 Teamsters Union.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

On January 11, 1995, plaintiff Michael Prudden's fourteen-year stint as a mechanic for defendant E.J. Brach came to an abrupt halt. On the heels of a demotion and pay cut, Prudden was terminated. Prudden brought this action in federal court for damages and reinstatement on April 4, 1996, alleging that his termination was precipitated by his age and disability in violation of the Age Discrimination in Employment Act and the Americans with Disabilities Act, respectively. In addition to suing both Brach and his union under these statutes, Prudden included a claim against Brach only based on § 301 of the Labor Management Relations Act ("LMRA"),[1] alleging that his discharge breached provisions in Brach and the union's collective bargaining agreement ("CBA") requiring just cause for his termination.

It is this claim alone, embodied in Count VI of Prudden's complaint, that drives the dispute presently before this Court. Defendant Brach contends that Prudden's LMRA § 301 claim is time-barred, and moves for its dismissal under Rule 12(b)(6). Brach points out that § 301 claims come in two varieties—"straightforward" and "hybrid"—with separate statutes of limitations to match. Hybrid § 301 claims, which allege not only that the employer breached the CBA, but also that the union breached its duty of fair representation by mishandling the ensuing grievance proceedings, must uniformly be brought within six months of the date they accrue. Straightforward claims, lacking the union breach of duty component, borrow the (often more lengthy) limitations period from the state law cause of action they most closely resemble.

Brach argues that Prudden's § 301 claim is of the hybrid variety, and, under even the most liberal reading of the complaint, was brought much later than six months after it accrued. Prudden maintains his claim is straightforward, and analogous to a breach of contract action, which enjoys at least a five-year limitations period in Illinois. After careful consideration, we have determined that Prudden's claim is inescapably hybrid. Failing the six-month limitations period for hybrid claims, it must be dismissed with prejudice. Accordingly, Brach's motion is granted.[2]

---

1. Section 301 of the Labor–Management Relations Act creates a remedy for breach of a collective bargaining agreement. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176 (7th Cir. 1993). Specifically, the statute allows "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry" to be brought in federal district court. 29 U.S.C. § 281 (1978).

2. Following the most recent status hearing on October 2, 1996, this Court issued a tentative ruling denying Brach's motion to dismiss Count VI. The Court has revisited this ruling and hereby vacates it.

## RELEVANT FACTS [3]

Prudden joined E.J. Brach as a mechanic on June 10, 1980, and remained there until he was discharged in January 1995. Compl. ¶¶ 8, 13, 23. Throughout his employment, Prudden was a member of Teamster's Local Union No. 738 ("the Union"). *Id.* ¶ 40. The Union and Brach were parties to a collective bargaining agreement, which governed the terms and conditions of Prudden's employment. *Id.* ¶ 51. The CBA establishes, among other things, a grievance procedure:

> In the event a misunderstanding or complaint arises between the parties as to the meaning or application of this Agreement, such shall be considered a grievance and both the Company and the Union will cooperate to settle such grievance promptly in accordance with the procedure set forth herein.

CBA ¶ 7.01. Should the grievance remain unsettled at the end of the four-step procedure, the Union has the option of requesting arbitration. CBA ¶ 7.05. The arbitrator's decision is then binding on both parties. CBA ¶ 8.02. In addition, the CBA renders the Union the employees' "sole and exclusive bargaining agent with respect to wages, hours of work and other conditions of employment." CBA ¶ 2.01. Its overriding purpose is to "provide orderly collective bargaining relations, to secure a prompt and equitable disposition of grievances ... and to maintain and improve a harmonious relationship between the Union and the Company." CBA ¶ 1.01.

Prudden's employment with Brach was uneventful (save a promotion in 1989) until May 1991, when he was diagnosed with work-related repetitive trauma injuries. Compl. ¶¶ 8–10. He was subsequently forced to take several medical leaves of absence. *Id.* ¶ 10. Allegedly refusing to accommodate Prudden's disability against the advice of its own medical consultant, Brach instead demoted Prudden and cut his pay on December 20, 1994, ultimately terminating him on January 11, 1995. *Id.* ¶¶ 11–14. Prudden was 45 years old at the time. *Id.* ¶ 13. The termination came as a surprise to Prudden, who claims that he had never been placed on probation or told that Brach was dissatisfied with his performance. *Id.* ¶ 16. When Prudden asked for an explanation, Brach cited a "general layoff." *Id.* ¶ 23.

Believing he had suffered discrimination on the basis of his age and disability, Prudden turned to the Union. On January 3, 1995, he demanded representation with regard to his demotion and pay cut. *Id.* ¶¶ 36, 43. On January 31, 1995, Prudden demanded representation with respect to his termination. *Id.* ¶¶ 37, 44. Prudden states specifically that the Union refused to defend his rights under the CBA, and refused to represent him in pursuing a grievance for either his demotion or termination. *Id.* ¶¶ 38, 41, 45, 48. This, he claims, amounted to age and disability discrimination on the part of the Union. *Id.* ¶¶ 41, 48.

The allegations against the Union are found in Counts IV and V of the complaint. But the contention central to Prudden's LMRA § 301 claim, the sole subject of Brach's motion to dismiss, lies in Count VI. Count VI complains that Brach violated § 301 by breaching the CBA, which permits dismissal only for just cause. *Id.* ¶ 51. We now turn to the issue of whether this claim is straightforward or whether it is hybrid, requiring dismissal on statute of limitations grounds.

## ANALYSIS

A motion to dismiss brought under Rule 12(b)(6) should be granted if the complaint fails to state a claim that entitles the plaintiff to relief. *Corcoran v. Chicago Park Dist.,* 875 F.2d 609, 611 (7th Cir.1989). In evaluating the motion, however, the court must as-

---

**3.** When deciding a motion to dismiss, this Court is bound to accept the allegations in the complaint as true. *See Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). In addition, the Court may consider documents not part of the complaint that a defendant attaches to a motion to dismiss if the plaintiff refers to them in the complaint and they are central to the plaintiff's claims. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993). While Prudden did not attach the CBA to his complaint, the agreement forms the basis of his § 301 claim, and both parties attached copies to their supplemental briefs. Accordingly, the Court will consider the CBA's contents.

sume all well-pleaded allegations in the complaint are true, and construe them in the light most favorable to the plaintiff. *Alexander v. City of Chicago,* 994 F.2d 333, 335 (7th Cir.1993). The court must be satisfied beyond doubt that the plaintiff can prove no set of facts in support of his cause of action before dismissing it. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *R.E. Davis Chem. Corp. v. Diasonics, Inc.,* 826 F.2d 678, 684–85 (7th Cir. 1988). Keeping in mind these generous pleading standards, we turn to the sufficiency of Prudden's § 301 claim.

### A. Straightforward vs. Hybrid Claims

■ Section 301 of the LMRA creates a federal avenue of relief for breach of a collective bargaining agreement. *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1179 (7th Cir.1993). Such suits are styled as either hybrid or straightforward actions. A hybrid § 301 claim arises when, in the case of an employer CBA violation, the union representing the employee in grievance proceedings to redress the violation acts "in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). The ensuing lawsuit thus comprises two causes of action—one against the employer for breach of contract and one against the union for breach of duty. *Id.* Establishing the union's breach of duty is, in these cases, an "indispensable predicate" to recovering from the employer. *Thomas v. UPS,* 890 F.2d 909, 915–16 (7th Cir.1989).

Conversely, the union breach of duty element is wholly absent from straightforward § 301 actions. To illustrate, courts have characterized as straightforward union suits under § 301 against employers based on breaches of CBA employee benefits provisions. *See UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *International Union of Elevator Constructors v. Home Elevator Co.,* 798 F.2d

222 (7th Cir.1986). These fact patterns do not raise questions as to the propriety of the union's behavior in handling a grievance. Indeed, straightforward claims are generally brought by unions, and do not assail the integrity of the grievance process. *Home Elevator,* 798 F.2d at 226.

■ The statute of limitations governing a § 301 claim depends entirely on its classification under this scheme. The straightforward/hybrid device is a tool for filling the gap Congress created by declining to assign the statute an express limitations period. *DelCostello,* 462 U.S. at 158, 103 S.Ct. at 2287. Courts faced with straightforward claims borrow the state statute of limitations for the most analogous cause of action, frequently the five-plus year period for breach of contract.[4] Hybrid claims, by contrast, have a standard six-month limitations period, derived from LMRA § 10(b)'s six-month deadline for reporting unfair labor practices to the NLRB. *DelCostello,* 462 U.S. at 169, 103 S.Ct. at 2293. In selecting this time period, the Supreme Court has stressed the family resemblance between union fair representation claims and allegations of unfair labor practices. *Id.* at 170, 103 S.Ct. at 2293–94. Both implicate "the national interests in stable bargaining relationships and finality of private settlements," *id.,* and applying the shorter limitations period advances federal labor law policy favoring "'relatively rapid disposition of labor disputes.'" *UPS, Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1563–64, 67 L.Ed.2d 732 (1981) (quoting *Hoosier Cardinal,* 383 U.S. at 707, 86 S.Ct. at 1114).

■ The issue before us, then, is whether Prudden's § 301 claim must allege that the Union breached its duty of fair representation as an "indispensable predicate" to recovering from Brach, invoking the six-month limitations period. The only matters of relevance according to Prudden are that his § 301 claim in Count VI names only Brach,

4. *See, e.g., Hoosier Cardinal,* 383 U.S. at 705–08, 86 S.Ct. at 1113–14 (applying Indiana's six-year statute of limitations for oral contracts to § 301 claim); *Home Elevator,* 798 F.2d at 229–30 (selecting Indiana's two-year limitations period governing employment disputes); *Merk v. Jewel Food Stores Div.,* 641 F.Supp. 1024, 1036–37 (N.D.Ill. 1986) (applying Illinois five-year statute of limitations for breach of oral contract), *aff'd,* 848 F.2d 761 (7th Cir.1987).

and that his complaint is devoid of explicit assertions that the Union breached its duty. Therefore, he contends, his claim is straightforward. However, the law is indifferent to the manner in which Prudden fashions his § 301 claim: "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290–91. As explained below, Prudden must prove as part of his § 301 claim that the Union breached its duty of fair representation by subverting the grievance process; it is the only way he can escape the need to exhaust his private remedies under the CBA and instead go directly to court.

### B. *The Exhaustion Requirement*

 Federal labor policy mandates that employees asserting a violation of their CBA rights first attempt to vindicate them through contract grievance procedures. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Smith v. Colgate–Palmolive Co.*, 943 F.2d 764, 771 (7th Cir.1991). As exclusive bargaining representative, the union must be afforded the opportunity to represent the employee in this process. *Republic Steel*, 379 U.S. at 653, 85 S.Ct. at 616–17. Only if the parties to the CBA expressly agree that the agreement's remedies are not exclusive may the employee proceed directly to court. *Id.* at 657–58, 85 S.Ct. at 619–20. Any doubts must be resolved against such an interpretation. *Id.* at 659, 85 S.Ct. at 619–20.

The hybrid claim is a creature of Supreme Court jurisprudence designed to alleviate the harsh effect of this exhaustion rule. In *Vaca v. Sipes*, the Court held that an employee terminated in violation of the CBA may proceed directly to court under § 301 even though he has failed to exhaust contractual remedies, if the employee can show that the union breached its duty of fair representation by wrongfully refusing to process the em-

ployee's grievance. 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967). Because grievance procedures are often devised and controlled by the union, the Court reasoned, the employee must be able to seek judicial review when the union has subverted those procedures. *Id.* at 185, 87 S.Ct. at 914. Whether or not the employee actually sues the union, however, it is "necessary" that the employee prove a union breach of duty. *Id.* at 186, 87 S.Ct. at 914–15. The *Vaca* Court reiterated, in passing, *Republic Steel's* observation that courts will also hear § 301 suits for breach of contract if the parties to the CBA did not intend its grievance procedures to constitute the exclusive remedy. *Id.* at 184 n. 9, 87 S.Ct. at 913 n. 9.

Reading *Republic Steel* and *Vaca* together reveals the proper analysis for determining the nature of Prudden's § 301 claim. If Brach and the Union did not intend the CBA to provide the exclusive remedy for its breaches, Prudden may go directly to court without exhausting internal remedies, and need not show that the Union breached its duty to get there. Absent the need to prove the Union's breach of duty, Prudden's claim would remain straightforward and unimpaired by the six-month statute of limitations. But if the CBA contains the exclusive remedy for redressing its violations, then Prudden can make an end-run around the grievance process only by showing that the Union breached its duty of fair representation. And this would subject his claim to the six-month statute. Interpreting the CBA in the light most favorable to Prudden, the Court finds that its grievance procedures constitute the exclusive remedy for Prudden's claim of discharge without just cause.[5]

### C. *The CBA Grievance Procedures Are Exclusive*

 Both Supreme Court and Seventh Circuit precedent, as well as the language in the CBA, compel the finding that grievance procedures constitute the exclusive remedy

---

**5.** It is well-settled that if Prudden's unsuccessful attempt to secure union representation in pursuing his grievances for demotion and discharge in violation of the CBA amounts to exhaustion, then Prudden is bound by that result under the CBA's finality provisions. *See* CBA ¶ 8.02. Again, to obtain judicial review, Prudden would have to prove that the Union subverted the grievance process. *DelCostello*, 462 U.S. at 163–64, 103 S.Ct. at 2289–90; *Brazinski*, 6 F.3d at 1179; *Huffman v. Westinghouse Elec. Corp.*, 752 F.2d 1221, 1223 (7th Cir.1985).

for Prudden's claim. In *Lancaster v. Norfolk & Western Ry. Co.*, 773 F.2d 807, 816 (7th Cir.1985), the Seventh Circuit stated that

> [w]here, as is true of more than 90 percent of such [collective bargaining] contracts, the contract establishes a grievance and arbitration remedy, that remedy becomes by force of section 301 exclusive. . . .

While the issue before the court was the scope of the Railway Labor Act's provision subjecting disputes arising under CBAs in the railway industry to compulsory arbitration, and not exhaustion of remedies under LMRA § 301, the court's reasoning as to the importance of enforcing private dispute resolution mechanisms is instructive, if not binding. A grievance, the court noted, is any complaint about a CBA violation or "a dispute over rights" that the agreement created. *Id.* at 814. If the plaintiff and his railway employer had such a "dispute over the meaning or application of the collective bargaining agreement," then his remedy was to file a grievance, "the first stage in invoking the arbitral remedies under the Act." *Id.* at 812.

While the CBA under which Prudden claims his rights were violated does not contain language identical to the Railway Act's compulsory arbitration clause, its grievance provisions cannot be read as anything other than the exclusive remedy for breaches of the agreement. Paragraph 7.01 provides that disputes over the CBA's "meaning or application . . . *shall* be considered a grievance" and that Brach and the Union "*will* cooperate to settle such grievance in accordance with the procedure set forth herein." CBA ¶ 7.01 (emphasis added). First, Prudden's claim that Brach breached the agreement's provisions requiring just cause for termination undoubtedly qualifies as a grievance under the *Lancaster* definition: "a claim of violation of the collective bargaining agreement." *Lancaster*, 773 F.2d at 814. Second, his suit fits squarely within the CBA formulation of a grievance as a dispute over the CBA's "meaning or application": "At a minimum, the jury would be forced to read and interpret the provisions of the . . . Agreement" to determine whether Prudden's discharge met the CBA's requisites for just

cause termination. *Smith*, 943 F.2d at 769 (internal quotations omitted). Finally, the CBA's language is mandatory, not permissive. Prudden's claim for breach is one that "shall" be considered a grievance, which Brach and the Union "will" cooperate to settle. These provisions leave Prudden no room to argue that he had the express option of skipping the grievance procedure in favor of court.

Prudden nonetheless vigorously argues that the CBA grievance and arbitration procedures are not the exclusive remedy for complaint underlying his § 301 claim. "Nowhere in the Collective Bargaining Agreement," he maintains, "is there a provision that states that the grievance procedure . . . [is] the exclusive remedy for breaches of the Collective Bargaining Agreement." Pl. Supplemental Br. at 1. In contrast, the agreement "very specifically and very definitely" designates the Union as sole and exclusive bargaining agent. *Id.* at 2. Prudden also cites *Saribekian v. Concrete Drilling & Sawing Co.*, 1990 WL 60779, at *2 (N.D.Ill. April 24, 1990), for the proposition that the defendant employer must show that CBA's grievance procedures are exclusive to prevent a material question of fact as to the necessity of exhausting contractual remedies.

We respectfully disagree with Prudden and *Saribekian*. The legal standard as set forth by the Supreme Court in *Republic Steel* is that grievance procedures are exclusive unless the parties expressly agree otherwise, not that such procedures are made exclusive only by an explicit provision to that effect. Prudden has not drawn our attention to language in the CBA permitting him to pursue claims for its breach in court, and we can find none. As for the CBA's proviso that the Union is the employees' sole and exclusive bargaining representative, it just reinforces Prudden's need to exhaust his contractual remedies, which "complements the union's status" as exclusive bargaining representative "by permitting it to participate actively in the continuing administration of the contract." *Republic Steel*, 379 U.S. at 653, 85 S.Ct. at 616–17. Moreover, if *Lancaster* is read literally, then all grievance and arbi-

tration procedures in CBAs are exclusive remedies.

It is thus apparent, under the law and the language of the CBA, that the agreement's grievance and arbitration procedures constitute the exclusive remedy for Prudden's claim that Brach discharged him without just cause in violation of the CBA.[6] Therefore, Prudden had to exhaust this remedy. The only way he may proceed in court is to prove that the Union breached its duty by refusing to pursue his grievances for demotion and termination.

### D. Prudden's Claim is Hybrid Because He Alleges a Union Breach of Duty

■ When an employee alleges that his union has wrongfully refused to process a grievance, he effectively charges the union with breaching its duty of fair representation, which forbids unions to "arbitrarily ignore a meritorious grievance." *Vaca,* 386 U.S. at 185, 191, 87 S.Ct. at 914, 917. Barred by the union from exercising contract remedies, the employee must sue the employer in court for the conduct that gave rise to the grievance. The result is a "hybrid" cause of action, whether or not the employee actually names the union as a defendant:

> The two claims are inextricably interdependent. To prevail against either the company or the Union ... [the employee] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.

*DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291 (internal quotations omitted).

In *Pantoja v. Holland Motor Express, Inc.,* 965 F.2d 323 (7th Cir.1992), the court held that an employee's suit against an employer for breaching the CBA was hybrid because it stemmed from the union's refusal to take action toward Pantoja's reinstatement. Pantoja filed a grievance with his union when his employer stopped hiring him on a day-to-day basis, allegedly contrary to provisions in the CBA. Although the Local Grievance Committee held a hearing and found in favor of Pantoja, the union refused to enforce the decision or take steps toward getting him rehired. The Seventh Circuit upheld the district court's finding that Pantoja's claim asserted a breach of union duty, even though he never amended his complaint to assert such a claim. In this respect, the district court "actually did Pantoja a favor, as he needed to make a claim against the union in order to have standing to sue." *Id.* at 326.

The facts in this case are reminiscent of *Pantoja* and, under the standards laid down in *Vaca* and *DelCostello,* clearly assert a union breach of duty. Like Pantoja, Prudden was stymied from exhausting his contractual remedies by the Union's refusal to pursue his grievance in any meaningful way. *See* Compl. Counts IV & V. Prudden, in fact, goes so far as to explicitly charge the Union in his complaint with a discriminatory refusal to defend his rights under the CBA and to advance his grievances for demotion or termination. *Id.* ¶¶ 37, 38, 41, 44, 45, 48. This amounts to an alleged "arbitrary" or "discriminatory" denial of Prudden's request, in violation of the Union's duty to represent him fairly. *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917; *DelCostello,* 462 U.S. at 164, 103 S.Ct. at 2290–91. That the Union's conduct is attacked in Counts IV and V while Prudden's § 301 claim resides in Count VI is irrelevant. Pantoja's complaint also failed to include allegations that the union breached its duty in his § 301 claim, which was nevertheless construed to be hybrid. *Pantoja,* 965 F.2d at 326; *see also DelCostello,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91 ("The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.").

Prudden misguidedly relies on *UAW v. Hoosier Cardinal Corp.* and *International Union of Elevator Constructors v. Home Elevator Co.* to bolster the argument that his claim is straightforward. Both those cases involved union suits against employers for breaching CBA provisions and in no way impugned the integrity of private grievance

---

6. Indeed, Brach's argument that Prudden himself recognized the exclusivity of the CBA's grievance procedures by demanding Union representation with regard to both his demotion and termination is persuasive.

procedures. Prudden's citation to *Merk v. Jewel Co.*, 848 F.2d 761 (7th Cir.1987) is similarly unavailing. While the action in *Merk*, as here, was a suit by former employees claiming union wrongdoing, the court found that the employees' claims arose after the union's duty to fairly represent them had expired. *Id.* at 1030. Because the former employees were suing to obtain retroactive pay under a union-employer settlement reached after they had voluntarily left the company, their interests conflicted with current employees'. *Id.* at 1030–31. The court took pains to distinguish the situation of wrongfully terminated former employees, like Prudden, whose interests are not at odds with current employees. *Id.* at 1031. And the court emphasized that employers cannot cut off union membership with an illegal termination. *Id.*

The upshot of the above analysis is that Prudden must, and has, alleged that the Union breached its duty of fair representation by refusing to process his grievance. As a result, his § 301 claim is hybrid.

All that remains is to apply the statute of limitations. Hybrid claims, subject to a six-month limitations period, accrue when "the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [breach of duty]." *Pantoja*, 965 F.2d at 327 (internal quotations omitted, alteration in original). Prudden knew about Brach's alleged breach of the CBA no later than January 11, 1995, when he was discharged. The complaint does not specify when Prudden became aware of the Union's breach of duty; however, the charge Prudden filed with the Illinois Department of Human Rights on May 30, 1995, attached as an exhibit to the complaint, refers to the Union's refusal to process his grievance. Therefore, Prudden learned of the union's breach at the latest on May 30, 1995. Since at least ten months passed from May 30, 1995 until Prudden filed suit in this Court on April 4, 1996, the six-month statute of limitations has run. Count VI must be dismissed.

## CONCLUSION

The Court thus vacates its tentative ruling issued on October 2, 1996, denying Brach's motion to dismiss Count VI. After further reflection and a thorough consideration of the law governing LMRA § 301 claims, we find that Supreme Court and Seventh Circuit caselaw compels classifying Prudden's § 301 claim as hybrid. Rather than delaying the inevitable until summary judgment, the Court has determined that an earlier ruling, which is warranted at this stage, will better conserve the parties' discovery resources and better define the litigation. The Court hereby grants Brach's motion to dismiss Count VI of Prudden's complaint with prejudice on statute of limitations grounds.