Joseph **PANTOJA**, Plaintiff–Appellant,

v.

**HOLLAND MOTOR EXPRESS, INC.**, Defendant–Appellee.

No. 90–2658.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1991.

Decided June 3, 1992.

Dennis Carlson (argued), Chicago, Ill., for plaintiff-appellant.

Lynne R. Ostfeld, Cowen, Crowley & Nord, Chicago, Ill. and A. Read Cone, III (argued), Dean & Fulkerson, Troy, Mich., for defendant-appellee.

Before CUMMINGS, COFFEY, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Joseph Pantoja, a member of Teamsters Local Union No. 705 in Chicago, sued Holland Motor Express, Inc. (Holland), alleging that Holland's refusal to rehire him after he was involved in a trucking accident violated its collective bargaining agreement (CBA) with the union and amounted to a retaliatory discharge under Illinois tort law. The district court granted Holland summary judgment on both claims, finding that the CBA claim was time barred and that Pantoja could not prove a retaliatory discharge because he failed to demonstrate that his termination violated any clearly mandated public policy of the State of Illinois. Pantoja next filed a Motion to Vacate and Reconsider, and the court granted it, in order that it might review its decision as to the applicable statute of limitations on the CBA claim. After a hearing on the issue, the court found that Pantoja was actually making a "hybrid" claim—one alleging both that the employer violated the CBA and that the union did not fulfill its duty of fair representation. Noting that a six-month statute of limitations applies to such claims, the court concluded that Pantoja's complaint was untimely because he filed his claim more than six months after it accrued and had been unable to prove any tolling of the limitations period. The Court thus reaffirmed the grant of summary judgment for Holland. Pantoja appeals, contending that summary judgment was improper as to each claim. We affirm the district court.

## I. BACKGROUND

Joseph Pantoja was a "casual" truck driver for Holland, meaning he was hired out of the union hall on a day-to-day basis. On May 30, 1985, Pantoja was working for Holland when another truck unexpectedly backed into his truck while it was parked at a rest stop. Pantoja reported this accident to Holland and to Illinois police, as required by state law. Holland's company policy

was that it would cease to employ "non-seniority" employees, including casuals, after they were involved in an accident, regardless of fault. As a result, it stopped hiring Pantoja.

As a casual employee, Pantoja was covered by the collective bargaining agreement between Teamsters Local 705 and Holland. Pursuant to the CBA, Pantoja filed a grievance with Local 705, hoping to have Holland "rehire" him. The matter went to a hearing, and the Local Grievance Committee found in favor of Pantoja, stating that "Tomorrow morning when the company calls for drivers, they will call Mr. Pantoja." Holland ignored this decision and stuck by its policy; it did not call Pantoja on the next day or any other day. The union, in turn, took no action to enforce the Grievance Committee's decision or have the plaintiff rehired.

When Holland refused to hire him as ordered, Pantoja filed a charge with the National Labor Relations Board (NLRB), accusing the company of committing an unfair labor practice by discriminating against him for engaging in union activities, namely, for filing the grievance. *See* 29 U.S.C. § 158. The NLRB Regional Director refused to issue a complaint on this charge, and the General Counsel of the NLRB denied Pantoja's appeal. Some four months later, on October 30, 1985, a frustrated Pantoja wrote a letter to the International Brotherhood of Teamsters, the legal counsel for Local 705, and Louis Geick, secretary-treasurer of Local 705 and president of Joint Council 25, asking them to force the union to make Holland comply with the decision of the Grievance Committee. He received no response to the letter.

Sixteen months later, in March of 1987, Pantoja filed his complaint in the Circuit Court of Cook County. Holland removed the case to federal court under diversity jurisdiction and moved for summary judgment. As construed by the district court, the complaint alleged three causes of action. First, that Holland's refusal to rehire Pantoja violated the CBA. Second, that Holland chose not to rehire him because he

had filed a grievance against it, a discriminatory act and an unfair labor practice under the National Labor Relations Act (NLRA).[1] 29 U.S.C. §§ 157, 158. Third, that Holland's refusal to rehire him, either because he had been in an accident or because it chose to disobey the Grievance Committee's decision, was contrary to Illinois public policy and therefore amounted to a retaliatory discharge. The court granted summary judgment in favor of Holland on all three claims. As to the CBA claim, it found that a six-month statute of limitations applied, citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Without discussing accrual or tolling, the court held that the claim was time barred. The court also rejected the unfair labor practice claim under the NLRA, noting that it lacked jurisdiction to review the decision because the General Counsel of the NLRB had issued a final order in the case, and such orders may only be reviewed by federal courts of appeal. 29 U.S.C. § 160(f). Turning finally to the retaliatory discharge allegation, the court observed that Illinois only recognizes a cause of action for this tort when the discharge violates a "clearly mandated public policy." *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985). Pantoja argued that Holland violated such a policy in two ways: by ignoring the Grievance Committee's direction to rehire him, and by refusing to rehire him simply because he had been in an accident, even though he was not at fault. The district court did not believe that Illinois had a "clearly mandated public policy" preventing Holland from discharging Pantoja for either of these reasons, and so granted summary judgment.

Pantoja then filed a Motion to Vacate and Reconsider. The court granted this motion in order to review its decision as to the statute of limitations on the CBA claim. The court was concerned that this may have been a direct action against Holland, rather than a "hybrid" claim against both Holland and the union as it had assumed.

---

1. Pantoja's brief does not indicate that he is      pursuing this claim on appeal.

Had it been a direct claim, a different limitations period would apply. As it turns out, the court's fears were unfounded. Relying on Pantoja's "latest brief" as asserting that the union failed to represent him fairly, the court decided that his claim was indeed a hybrid, subject to the six-month limitations period. Though Pantoja never formally amended his complaint to make a claim against the union, the court said that this formality was unnecessary, because it would construe the complaint on file as stating a claim against the union. In doing so the court actually did Pantoja a favor, as he needed to make a claim against the union in order to have standing to sue.[2] The court next found that Pantoja's claim accrued, at the latest, on October 30, 1985, when he wrote the letter to union leaders. Statements in this letter revealed that Pantoja either knew or strongly suspected that the union would not pursue his claim further, and thus had breached its duty of fair representation. Once aware of this, he had no reason to delay bringing suit. Further, the court held that the limitations period was not tolled at any time between October 30, 1985 and the filing of the complaint on March 9, 1987. Thus, the court found that the claim was untimely and again entered summary judgment in Holland's favor.

## II. ISSUES

This appeal raises two main issues. First, was the CBA claim barred by the statute of limitations, or was the limitations period tolled by the pursuit of internal union remedies? Second, was there any genuine issue of material fact as to the existence of a state law claim for retaliatory discharge?[3] We review a grant of summary judgment *de novo*, viewing all facts and reasonable inferences in the light most favorable to the non-moving party. *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107 (7th Cir.1990). Summary judgment is proper when no issues of material fact remain, such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When a party makes a properly supported motion, the non-movant must demonstrate that a genuine issue of material fact remains for trial. Fed.R.Civ.P. 56(e).

## III. THE STATUTE OF LIMITATIONS FOR HYBRID CLAIMS UNDER § 301

The complaint alleged that Holland violated the CBA by refusing to use Pantoja even after being directed to do so by the Grievance Committee, whose rulings on disputes between Holland and the union were to be "final and binding" under the terms of the CBA. The district court also interpreted the complaint as charging the union with breaching its duty of fair representation by neglecting to attempt to enforce the Grievance Committee's decision and have Pantoja reinstated. It is well settled that a six month limitations period applies to hybrid claims under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. *DelCostello v. Internation-*

---

**2.** The collective bargaining agreement's Article 19, Section 3 gave the union the sole right to sue to enforce grievance decisions rendered under the CBA. Thus Pantoja could not sue Holland directly to enforce the agreement. But courts have held that, despite such clauses, union members may still sue to enforce a CBA if they bring a hybrid claim alleging that the union breached its implied duty of fair representation. *See Plumbers' Pension Fund v. Domas Mechanical Contractors, Inc.,* 778 F.2d 1266, 1270 (7th Cir.1985).

**3.** Pantoja also claims that the district court improperly refused to allow him to amend his complaint to state his intended causes of action. The record belies this contention. At the hearing on the plaintiff's Motion to Vacate and Reconsider, he notified the court that he had moved to file an amended complaint, but that he now wished to withdraw that motion. After some discussion as to what the amended complaint would change, the court said, "Well, I mean, you can bring any motion that you wish, and I will hear it. It is not fair to try to hear something on a piecemeal basis, but is there anything else that you want to put on the record at this point?" Pantoja's counsel replied, "No." Appellee's Supp.App. at 43–44. Thus, Pantoja had leave to file an amended complaint under Fed.R.Civ.P. 15(a), but decided not to. If the plaintiff thought that the court had misinterpreted his complaint he had every opportunity to file an amended pleading to clarify his position, and his failure to do so cannot be re-cast as a judicial error.

*al Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Sosbe v. Delco Electronics Div. of General Motors Corp.*, 830 F.2d 83 (7th Cir.1987). Pantoja filed his complaint on March 9, 1987, so the question here is whether his claim accrued within the six months prior to this date, or, if not, whether the limitations period was tolled so as to make the complaint timely. As to accrual, we have held that "[t]he six-month period begins to run 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [breach of duty].' " *Steffens v. Brotherhood of Ry., Airline and Steamship Clerks, Freight Handlers, Express and Station Employees*, 797 F.2d 442, 446 (7th Cir.1986), quoting *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 850 (7th Cir.1985). In hybrid claims under § 301, the union member is attacking both the employer and the union. Pantoja knew of Holland's breach of its duty as soon as it failed to reemploy him within a reasonable time after he won before the Grievance Committee. The more difficult task is determining when he knew, or should have known, that the union had breached its duty of fair representation. Only then would his full hybrid claim have accrued.

The district court held that the claim accrued, at the latest, on October 30, 1985. On that day Pantoja sent a letter to the International Brotherhood of Teamsters in Washington, D.C. and local Teamsters officials demanding that the union take action to "reactivate the grievance to the 8–man board as requested earlier to Dan Ligorotis," and "to enforce the agreement of the grievance settlement." Other statements in the letter, though, revealed Pantoja's belief that the union probably would not help him: "If the Union condones [Holland's policy of terminating drivers involved in accidents, regardless of fault] as it seems they do, because I have never received a reply concerning enforcement of the contract; then it too is engaged in DISCRIMINATION. I proved myself NOT GUILTY at the grievance hearing—now this union better do it's (sic) job and quit retaliating against me for the

past." The district court found that these statements demonstrated that Pantoja knew that the union would not pursue his claim, possibly breaching its duty of fair representation, and therefore held that his cause of action accrued no later than October 30, 1985. The court relied on *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984) for the proposition that a claim against a union can accrue even though the union never officially notifies the plaintiff that it will not do what the plaintiff requested. Prolonged inaction is sufficient to give a diligent plaintiff notice that the union has breached its duty of fair representation. "The appellant cannot be allowed to sit back and claim lack of notice in circumstances such as these.... [T]he alleged violation, which consisted of union inactivity, should have been discovered by a reasonably diligent plaintiff." *Id.* at 304. Thus Pantoja cannot claim that the union's failure to respond to his requests kept his claim from accruing; he did not need formal notification to realize that the union would not help him and that he needed to bring suit himself. Because a long sixteen months passed between accrual and the filing of the complaint, the court held that the § 301 claim was time barred.

Pantoja does not argue over the accrual date, but contends that the limitations period was tolled by his pursuit of internal union remedies. *Frandsen v. Brotherhood of Ry., Airline & Steamship Clerks*, 782 F.2d 674 (7th Cir.1986). In *Frandsen*, the court harmonized two Supreme Court cases that put plaintiffs with hybrid claims in a quandary. *Clayton v. UAW*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) held that a plaintiff must normally exhaust internal union remedies before bringing a duty of fair representation suit, but that exhaustion is not required where pursuit of those remedies would be futile. *DelCostello*, on the other hand, adopted the six-month statute of limitations for duty of fair representation claims. 462 U.S. at 158, 103 S.Ct. at 2287. The court in *Frandsen* had to decide how to treat plaintiffs who

might not be able to exhaust internal union remedies within six months of their injury, and thus, by following *Clayton,* would lose their rights to sue the union in federal court because of the *DelCostello* statute of. limitations. Reconciling these cases in favor of exhaustion of intra-union remedies, the court held that the six-month statute of limitations for duty of fair representation claims, and hence for hybrid claims under § 301, is tolled while an employee pursues internal union remedies. *Frandsen,* 782 F.2d at 681. The policy behind this rule is to allow plaintiffs to exhaust internal union remedies without fear that later suits against the union for breach of the duty of fair representation will be time barred. *Id.* In Pantoja's opinion his October 30, 1985 letter, mailed to the international union, Louis Peick (secretary-treasurer of Local 705 and president of Joint Council 25), and Local 705's legal counsel, served as an attempt to invoke internal union remedies because it asked union leaders to prod the local union to enforce the grievance settlement, and therefore tolled the limitations period.

Presumably, the internal union remedy Pantoja is referring to is that found in Article 19, Section 3 of the CBA. Section 3 provides that when Holland fails to comply with any duty regarding employee grievances, the union has discretion to pursue "all legal and economic recourse (including the right to strike) in support or enforcement of its demands." According to Pantoja, his letter was an attempt to pursue intra-union remedies under Section 3. The problem with this claim is that he had already exhausted his internal union remedies by asking Dan Ligorotis[4] to take action on his behalf. As he said in the letter, "I contacted Dan Ligorotis by telephone and requested an 8–man Board Hearing to enforce the settlement that was agreed to and signed at the first grievance hearing."[5] Once Mr. Ligorotis neglected to take action, and Pantoja knew it, he had no more internal union remedies to pursue, and his claim against the union for breach of its duty of fair representation accrued. Likewise, his letter to various people at higher levels in the union was simply a general appeal for help, not the invocation of a formal union procedure. In this respect the case resembles *Sosbe v. Delco Electronics Div. of General Motors Corp.,* 830 F.2d 83 (7th Cir.1987). There the employer, General Motors, took away Sosbe's seniority, imperiling her job security. The union's local bargaining chairman told Ms. Sosbe that the union did not support her claim and would not represent her against the employer. Rather than following the union's formal internal grievance procedure in seeking to have the union represent her, however, Sosbe wrote letters and made phone calls to international union officers, asking for their help. When she later filed her hybrid § 301 claim, Sosbe needed to prove tolling in order to avoid the statute of limitations, and she claimed that her letters and calls proved that she was pursuing her internal union remedies, thus tolling the statute of limitations under *Frandsen.* The court disagreed, explaining that "[c]ontinued correspondence with the union does not, however, toll the six-month time limit. 'Otherwise, a plaintiff could indefinitely delay resolution of Labor disputes merely by bombarding his union with tiresome requests....'" *Id.* at 87, quoting *Dozier v. Trans World Airlines, Inc.,* 760 F.2d 849, 852 (7th Cir.1985). Similarly, Pantoja's letter did not serve to toll the limitations period; if it did then plaintiffs could toll the period forever simply by going up the ladder of union officials, informally asking each one for help. *Frandsen* revealed a preference for private resolution of labor disputes, but only where there is a definite procedure for doing so; we cannot assume that the court would have favored tolling while an employee writes letters asking third parties to adopt his cause.

---

4. Pantoja does not specify what position Dan Ligorotis holds, but he refers to Mr. Ligorotis as if he is his (Pantoja's) union representative or holds some other influential position in Local 705.

5. It is unclear what Pantoja is referring to when he mentions the "8–man Board." The CBA does not refer to such a body, and neither party has mentioned appeal to an 8–man board as part of a member's internal union remedies.

*Bonds v. Coca–Cola Co.*, 806 F.2d 1324, 1327 (7th Cir.1986) is to the same effect. In that case the court discussed the rule of *Freeman v. Local Union No. 135, Chauffeurs, Teamsters, etc.*, 746 F.2d 1316 (7th Cir.1984), which held that a hybrid claim under § 301 accrues on the date of an unfavorable arbitration decision. The court rejected any claim that the statute of limitations ought to be tolled while the union contemplates whether it will file suit on the matter arbitrated, reasoning that *Freeman* provided a certain accrual date and stating that "[I]t is not a good idea to use tolling to undo rules of the sort established in *Freeman.* We have attempted to keep the rules for computing time in *DelCostello* cases as simple as possible." 806 F.2d at 1327. So it is here; tolling occurs while a plaintiff pursues specific internal union remedies through the designated channels; it does not occur while the plaintiff seeks whatever relief might be available. Because the letter failed to invoke any specific internal union remedies, and thus did not toll the statute of limitations, Pantoja's § 301 claim is time barred.

## IV.  RETALIATORY DISCHARGE

Pantoja's other claim is based on the state law tort of retaliatory discharge. He alleges that Holland refused to rehire him in retaliation for (1) reporting his accident to state authorities as required by law, (2) bringing a grievance against the company when it stopped using him after the accident, and (3) prosecuting a lawsuit against a former employer. The district court found that Pantoja had failed to present a disputed issue of material fact regarding these charges, and so granted summary judgment to Holland.

Pantoja was a casual employee, which the CBA defines as "an individual who is not on the regular seniority list and who is not serving a probationary period." CBA, Article 2, Section 3, Appellee's Supp.App. at 6. Holland hired casuals from the union hall on a day-to-day basis. Having no seniority and no definite term of employment, it is evident that Pantoja must be considered as having been an at-will employee

for Holland. *See Habighurst v. Edlong Corp.*, 209 Ill.App.3d 426, 154 Ill.Dec. 226, 228, 568 N.E.2d 226, 228 (1991). In Illinois, at-will employees may generally be discharged for any reason or for no reason at all. *Russ v. Pension Consultants Co.*, 182 Ill.App.3d 769, 131 Ill.Dec. 318, 321, 538 N.E.2d 693, 696 (1989). There is an exception to this rule when the firing amounts to the tort of retaliatory discharge. *Id.* To prevail on a claim of retaliatory discharge, a plaintiff must prove (1) that he or she was discharged, (2) in retaliation for his or her activities, and (3) the discharge violates a clearly mandated public policy. *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill.2d 526, 116 Ill.Dec. 694, 696, 519 N.E.2d 909, 911 (1988). Illinois courts have found that a discharge violates a clearly mandated public policy in two kinds of cases. First, an employer may not fire an employee for asserting a workmen's compensation claim. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Second, an employer may not discharge an employee for either refusing to engage in illegal conduct, *Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 187 (1986), or for reporting the illegal conduct of co-employees. *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981). But the tort is not necessarily limited to these two categories. As the Illinois Supreme Court recognized in *Palmateer*, there is no precise definition of the term "clearly mandated public policy," though "it can be said that public policy concerns what is right and just and what affects the citizens of the state collectively." *Id.* 52 Ill.Dec. at 126–27, 421 N.E.2d at 878–79. Generally, public policies are enumerated either in the State's constitution and statutes, or in its judicial decisions. *Id.* Though his claims do not fit neatly into either of the two main categories, Pantoja argues that retaliatory discharge is a flexible, expanding tort, and that Holland's reasons for firing him violated Illinois public policy.

■ First, there is the allegation that Holland discharged Pantoja because he filed a grievance. One logical difficulty with this claim is that when he filed the grievance Pantoja had already been terminated. While a retaliatory discharge might occur if an employer discharged an employee in anticipation of the employee's filing a grievance, *see Cannella v. Nationwide Carriers, Inc.,* 687 F.Supp. 362, 365 (N.D.Ill.1988), Pantoja has not produced any evidence indicating that Holland fired him for this reason, or that it even knew that Pantoja was planning to file a grievance. Rather, he rests his claim on alleged statements after the grievance hearing by Holland's Terminal Manager, Don Posey. Pantoja asserts that Posey said Holland would not rehire him because he had filed a grievance. R.Doc. 50, ¶ 9. Absent proof that he was originally fired in retaliation for his intent to file the grievance, however, this statement does nothing to cast doubt on Holland's explanation that it discharged Pantoja because of its accident policy. In addition, the plaintiff has not attempted to demonstrate that this policy violates any policy of Illinois. Thus, his claim on this point fails, as he has not demonstrated the existence of a genuine issue of material fact as required by Fed. R.Civ.P. 56(e).

■ Next, Pantoja asserts that Holland retaliated against him for filing an accident report as required by state law. This claim also fails, as it is unsupported by any factual allegations linking Holland's decision to Pantoja's acts. Holland told Pantoja that its policy was to refuse to rehire any casual involved in an accident, regardless of fault. Holland then acted on this policy and stopped hiring Pantoja. So far as appears, Pantoja's reporting of the accident to Holland and state authorities did not cause his discharge. Further, he fails to point to a state statute or decision recognizing limits on an employer's ability to fire an at-will employee for being involved in a work-related accident. Thus, Holland's policy does not appear to contravene any clearly mandated public policy of Illinois, and Pantoja again fails to present any evidence that would bar summary judgment.

■ Finally, the same analysis applies to the allegation that Holland retaliated against Pantoja for prosecuting a lawsuit against a former employer. The record is barren of any facts to support this claim. In fact, it is not clear that Holland even knew of this suit, much less relied upon it as a reason to discharge the plaintiff. Once again, Pantoja presents no evidence raising an issue as to Holland's intent in firing him. And even if Holland was motivated by the prior lawsuit, Pantoja has not singled out any state statute or decision creating a public policy against firing an employee for this reason. His reliance on *Pantoja v. Texas Gas and Transmission Corp.,* 890 F.2d 955 (7th Cir.1989) is unavailing. In that case the court held that a claim for the state tort of retaliatory discharge was not pre-empted by § 301 because it could be resolved without requiring the court to interpret the terms of the CBA; it did not hold that firing an employee because he had sued a prior employer violated a clearly mandated public policy. Like the others, this claim fails because the plaintiff has not demonstrated the existence of any genuine issue of material fact.

## CONCLUSION

The judgment of the district court is AFFIRMED.