Virginia CHRISTIANSEN,
Plaintiff-Appellant,

v.

APV CREPACO, INC., and Blackhawk Lodge No. 957, International Association of Machinists and Aerospace Workers, Defendants-Appellees.

No. 98–1820.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1999.

Decided May 24, 1999.

Anne B. Shindell, Sally A. Piefer, Daniel J. Finerty (argued), Shindell Law Firm, LLC, Milwaukee, WI, for Virginia Christiansen.

David B. Kern (argued), Quarles & Brady, Milwaukee, WI, for APV Crepaco, Inc.

Matthew R. Robbins (argued), Previant, Goldberg, Uelmen, Gratz, Miller & Bruegeman, Milwaukee, WI, for Blackhawk Lodge 957, International Association of Machinists and Aerospace Workers.

Before POSNER, Chief Judge, and FLAUM and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

A machine shop employee claimed that her employer was not paying her for skills she had obtained under a job training incentive program. Five years after first complaining to her union, the employee still had not received any skill-based pay increase and filed suit against the union for failure to represent her interests and against the company for breach of the collective bargaining agreement. The district court granted the defendants' motion for summary judgment, holding that the employee's claims were barred by the six month statute of limitations applicable to claims under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). We now affirm the district court's decision.

## Background

Since 1972, Virginia Christiansen has worked as a machinist for APV Crepaco ("APV"), a manufacturer of food processing equipment in Lake Mills, Wisconsin. In 1991, AVP and Christiansen's union, Blackhawk Local 957 ("Local 957") negotiated a learn-to-earn program ("program") which allowed employees to qualify for higher pay by acquiring certain "skill blocks." That year Christiansen, who normally operated a polishing lathe, received five hours of training on a # 17 grinder. At that time, no formal requirements had been established for determining whether an employee had attained a new skill block for purposes of the program. Although her instructor never signed off on her ability (a requirement of the program starting in 1992), a "Machining Skills Matrix" posted by the union at AVP had an "x" displayed next to Christiansen's name in the column marked # 17 grinder. Christiansen took this to mean she had attained that skill block.[1] When she received no pay increase in late 1991 or early 1992, Christiansen complained to her union shop steward who promised to look into it and get back to her. The steward apparently did nothing and a year later she complained to a different steward. Again, she got no response, and no grievance was filed by the union on her behalf. This continued for the next five years with four different stewards. Finally, in 1996, Christiansen went directly to the learn-to-earn program committee (made up of union members) and demanded the extra pay for the grinder skills she attained in 1991.

The committee maintained that she had not received sufficient training, but said

---

1. Local 957 insists that the matrix only indicated which employees have operated certain machines and had nothing to do with the learn-to-earn program.

that she was free to prove her skill by demonstrating to them that she could operate the #17 grinder. She said she would not undergo the test unless she could be given an orientation on the machine. When the committee refused, the learn-to-earn steering committee made up of union and company representatives affirmed its decision. Christiansen again complained to the union. This time Local 975 did file a grievance on Christiansen's behalf. According to the terms of the collective bargaining agreement in effect at all relevant times between Local 975 and APV, employee disputes over wages were subject to a formal grievance procedure and had to be filed within seven working days of the offending occurrence, or the time the employee or union was or reasonably should have been aware of it. Because the event giving rise to Christiansen's grievance occurred in 1991, the company denied it as untimely. After reviewing her case, Local 975 agreed with APV and decided not to pursue it through arbitration. The union posted its decision on November 13, 1996, but Christiansen was not informed of it until December 3, 1996.

On June 3, 1997, Christiansen filed a hybrid Section 301 claim against Local 957 claiming the union breached its duty to fairly represent her interests, and against APV for breaching the collective bargaining agreement. In addition, she filed a Title VII claim against APV claiming men had been more favorably treated under the learn-to-earn program than women.

After the defendants moved for summary judgment, the district court held that the Section 301 claims were barred by the applicable six month statute of limitations. *See DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (statute of limitations applicable to hybrid 301 claims is the six month period borrowed from Section 10(b) of National Labor Relations Act, 29 U.S.C. § 160(b)). The court reasoned that Christiansen's claim accrued not in 1997 upon the union's refusal to pursue her claim but at some point in the early 1990's when, after repeated requests, she realized (or should have) that Local 957 had failed to file a grievance with APV within seven days of the offending occurrence.[2] Because she was not pursuing internal grievance channels during that time, the court held that Christiansen's repeated requests to the union did not toll the limitations period.[3]

### Discussion

The sole issue on appeal is whether the court correctly disposed of Christiansen's Section 301 claim on summary judgment as time barred. We review the grant of summary judgment de novo, *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994), to determine whether there is any "genuine issue as to any material fact, and [that] . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 932 (7th Cir. 1994). If no reasonable juror could find for the non-moving party, the motion must

---

2. The district court correctly held that in a hybrid Section 301 claim, the claims against the employer and against the union are interdependent. *See Metz v. Tootsie Roll Industries*, 715 F.2d 299, 301 (7th Cir.1983). It is well settled that an essential element of a Section 301 action against an employer is a showing that the union has breached its duty to fairly represent. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 61–62, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). This is because normally, as here, where the collective bargaining agreement provides for final binding arbitra-

tion of certain labor disputes, such decisions (or the lack thereof) will be vacated only where the union has failed to fairly represent the union member. *Id.* Therefore, the court examined only the timeliness of the claim against the union. Because we agree with the court's conclusion that the failure to represent claim is time barred, we need not separately examine the collective bargaining claim against APV.

3. The court also held that Christiansen's Title VII claim was time untimely. She does not appeal that decision.

be granted. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir.1998). Although we view the evidence in a light most favorable to the non-movant, that party may not "rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; [it] must go beyond the pleadings and support [its] contentions with proper documentary evidence." *Chemsource Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir.1997). With this standard in mind we review Christiansen's claim.

### Accrual Date

■ The statute of limitations for a Section 301 claim begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983). In Christiansen's case, the act constituting the violation was the union's failure to pursue her learn-to-earn complaint through the grievance procedure. *See Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir.1986). The district court held that because a reasonable person in the plaintiff's position would have known by 1994 at the latest that Local 957 was not pursuing her grievance, the failure to represent claim filed in 1997 was untimely. Although Christiansen admits that the proper limitations period for her hybrid 301 claim is six months, *see DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), she argues that it was not triggered until December 3, 1996, the date she received actual notice that the union would no longer pursue the grievance it finally filed on her behalf. Prior to that time, she asserts, the union had not made any final decision on her claim, and for all she knew, could have been working on it continuously since she initially approached her union steward in 1991. *See Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1246 (7th Cir. 1990).

We cannot accept Christiansen's argument. This court has held that when a collective bargaining agreement requires that all grievances be brought within a certain period, "under the terms of the collective bargaining agreement, the failure and refusal of the Union to file the grievance within the specified time amounted to a final decision." *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 303 (7th Cir.1983) (citing *Hall v. Printing and Graphic Arts Union, Local No. 3*, 696 F.2d 494, 497 (7th Cir.1982)). In *Metz*, an employee who felt she had been unfairly discharged notified her union of the grievance. Although the union sent a letter to the employer claiming that the discharge violated the collective bargaining agreement, the union never processed her grievance despite repeated requests by Metz to do so. *Id.* at 301. For over a year, the union took no steps to advance her grievance and Metz finally filed a failure to represent claim against the union under Section 301. *Id.* The district court dismissed the suit as time barred and this court affirmed, holding that because the collective bargaining agreement then in effect required that all grievances be filed within five days of the event giving rise to the claim and because Metz should have been aware more than six months before she filed suit that the union had not done so, she had waited too long to bring her failure to represent claim. *Id.* at 303.

We believe Christiansen's suit is untimely for the same reasons. First, the collective bargaining agreement between APV and the union specified that all grievances be brought within seven days of the offending occurrence. By failing to file Christiansen's grievance within that period, Local 957 made a final decision about it some time in 1991. *Id.* Second, Christiansen should reasonably have become aware of the union's 1991 decision well before December 3, 1996. *Pantoja v. Holland Motor Exp., Inc.*, 965 F.2d 323, 327 (7th Cir.1992) ("Prolonged inaction is sufficient to give a diligent plaintiff notice that the

union has breached its duty of fair representation."). In fact, as the district court noted, the plaintiff indicated in her deposition that the reason she kept asking the union to do something about her learn-to-earn complaint was that she realized Local 957 had filed no grievance on her behalf. *See Cohen v. Flushing Hospital and Medical Center*, 68 F.3d 64, 68 (2nd Cir.1995) ("Even if [the plaintiff] entertained hopes of future representation by the Union, he knew that it had done nothing ... to pursue his grievance against [the employer]. This knowledge was sufficient to start the limitations running.") (discussing *Metz*, 715 F.2d at 303–04).

The fact that the union did not directly notify Christiansen that it failed to file her grievance in 1991 is not itself a bar to accrual: "The appellant cannot be allowed to sit back and claim a lack of notice in light of circumstances such as these ... This result is consistent with the strong federal policy favoring prompt resolution of labor disputes."[4] *Metz*, 715 F.2d at 304 (citations omitted); *Pantoja*, 965 F.2d at 327 ("[Plaintiff] did not need formal notification to realize that the union would not help him and that he needed to bring suit himself.") While it is not necessary to determine the exact date on which her failure to represent claim accrued, it is enough to conclude that the limitations period expired well before Christiansen filed this suit.

■■■■ Nonetheless, the plaintiff maintains that our holding in *Metz* is distinguishable, and therefore not controlling. She argues that unlike in *Metz*, where the plaintiff's discharge was a single discrete violation of the collective bargaining agreement at issue, *see* 715 F.2d at 306, Chris-

tiansen's claim involved a continuing violation by the company (the ongoing denial of pay for skills she possessed) and by the union (its repeated failure to follow up on her requests). According to Christiansen, the ongoing nature of these violations meant the union's failure to represent included acts within the limitation period, rendering the entire action timely. *See id.* We do not find this argument convincing. As to the employer, Christiansen is only complaining about APV's failure to increase her pay based on the qualifications she claims to have attained in 1991. The effects of that failure may still have been felt in 1996, but that does not render the company's decision a continuing violation. A continuing violation requires unlawful acts to occur within the limitations period. *See Local No. 1424, Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411, 422, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) ("*Bryan Manufacturing*"). As the Supreme Court has explained, there is no continuing violation sufficient to delay the statute of limitations if the conduct within the six month period is only unlawful in light of conduct outside of the six month period. *Id.*; *Ray Lewis v. Local Union 100*, 750 F.2d 1368, 1369 (7th Cir.1984). The company's failure to pay her a higher amount each pay period is not a new violation, but the result of the fact that she did not receive credit for her training when she claims to have earned it in 1991.[5] *See Dasgupta v. University of Wisconsin Board of Regents*, 121 F.3d 1138, 1140 (7th Cir.1997) (in Title VII context, distinguishing between continuing unlawful acts and the lingering effect of an unlawful act; only the former establish a continuing violation). *See Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1001 (6th

---

4. We do not condone the union's alleged failure to give Christiansen actual notice of its decision not to file a grievance on her behalf. Indeed, unions should be encouraged to notify their members of grievance decisions as soon as possible. *See Metz*, 715 F.2d at 304. We hold, however, that under these circumstances, the lack of official notice is insufficient to toll the limitations period indefinitely.

5. The situation would obviously be different if Christiansen was learning new skills and each time she acquired one the employer failed to reward her under the learn-to-earn program. In that case, each denial would give rise to a new claim and together the denials would make up a continuing pattern. *See Bryan Manufacturing*, 362 U.S. at 422, 80 S.Ct. 822.

Cir.1994) (citing *Metz,* 715 F.2d at 306) (Company's firing of plaintiff based on seniority during limitations period was not continuing violation of its earlier, allegedly wrongful, denial of plaintiff's seniority status).

■■ As to the union, this circuit has clearly held that "continued union inactivity after an initial failure to respond to a grievance request does not constitute a continuing violation of the duty of fair representation." *Adams v. Budd Co.,* 846 F.2d 428, 431 (7th Cir.1988) (citing *Metz,* 715 F.2d at 305–306). In *Metz,* we held that even though the plaintiff continued to request the union's assistance during the limitations period, the union's inactivity with respect to the grievance was "only an unfair labor practice by reason of circumstances existing at or before [the start of the limitations period]." 715 F.2d at 306. Under these circumstances, the union's conduct could not be used to revive a time barred claim. *Id.* The same is true of Christiansen's claim. Her complaint is that the union did not grieve her dispute in 1991. Once the union's decision became final seven days after failing to file a grievance, its subsequent inactivity did not amount to a new violation. The result is the same even where, as here, the union eventually did file a grievance on behalf of the plaintiff based on the original complaint. Contrary to Christiansen's suggestion, subsequent union action on the same grievance does not restart the limitations clock. *See Sosbe v. Delco Electronics Div. of General Motors Corp.,* 830 F.2d 83, 86 (7th Cir.1987) (accrual date for plaintiff's failure to represent claim was union's initial denial of the grievance, not the date a subsequently filed grievance was withdrawn by the union).

Thus, because Christiansen either knew or should have known that Local 957 had not processed her grievance in 1991, and she has not established a continuing violation sufficient to extend the limitations period, her claim was untimely in 1997.

*Tolling*

■ Christiansen's final argument is that even if the limitations period did start to run in 1991, it should have been tolled while she sought help from successive union stewards concerning her grievance. She correctly cites *Frandsen v. Bhd. of Railway, Airline and Steamship Clerks,* for the proposition that, in failure to represent claims, the statute of limitations is tolled while the plaintiff exhausts internal union grievance procedures, even when those procedures ultimately prove futile. 782 F.2d 674, 681 (7th Cir.1986). However, subsequent cases from this circuit clearly limit tolling under *Frandsen* to the pursuit of formal or required internal procedures. *See Pantoja v. Holland Motor Exp., Inc.,* 965 F.2d 323, 329 (7th Cir. 1992); *Sosbe,* 830 F.2d at 87.

Local 957's constitution sets up an internal procedure which requires the filing of a written description of the alleged misconduct with the international union president. It is undisputed that Christiansen never attempted to invoke this procedure. Instead, she informally sought the assistance of her local union stewards. We have held that similar behavior is insufficient to toll the statute of limitations. *See Pantoja,* 965 F.2d at 327 (letter to union official was "a general appeal for help, not the invocation of a formal union procedure"); *Sosbe,* 830 F.2d at 87 (plaintiff's contacting local union chairman and writing letter to president of employer did not toll statute of limitations under *Frandsen*). To hold otherwise would mean that "plaintiffs could toll the period forever simply by going up the ladder of union officials, informally asking each one for help." *Pantoja,* 965 F.2d at 329. Such a result would obviously run counter to the strong national interest in expediting the resolution of labor disputes. *See DelCostello v. Teamsters,* 462 U.S. 151, 168, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The limitations period was therefore not tolled as Christiansen continued to ask her local union representative about the status of her grievance,

and her failure to represent claim was untimely.[6]

## Conclusion

Because the plaintiff has failed to bring her claim within six months of its accrual, and the limitations period was not tolled, the district court correctly dismissed her suit. We therefore Affirm its decision.

---

**6.** Local 957 and APV maintain that they are entitled to summary judgment on the merits of Christiansen's Section 301 claim. Because we hold that the claim is untimely, we need not address this question.