Silas I. BRAXTON, Plaintiff–Appellant,

v.

LOCAL 7–776 OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, et al., Defendants–Appellees.

No. 00–3912.

United States Court of Appeals, Seventh Circuit.

---

Submitted March 9, 2001.*
Decided May 31, 2001.

Before RIPPLE, HKANNE, and DIANE P. WOOD, Circuit Judges.

## ORDER

Silas Braxton, a former Amoco employee who alleges that he was terminated in violation of his collective bargaining agreement (CBA), appeals the entry of summary judgment and argues that the district court erred in determining that his claims were filed outside the applicable limitations period. We conclude that summary judgment was appropriate and therefore affirm the judgment of the district court.

## I

## BACKGROUND

Mr. Braxton's case has been before this court twice before. *Braxton v. Amoco Oil Co., Inc.*, No. 99–2143, 1999 WL 1256565 (7th Cir. Dec. 22, 1999); *Braxton v. Chemical Local 7–776*, No. 98–1417, 1998 WL 796082 (7th Cir. Nov. 12, 1998). We presume familiarity with the factual and procedural details and will present only the information pertinent to the issue before us today. Mr. Braxton began working for Amoco[1] in 1975 and was covered by a CBA between Amoco; the Oil, Chemical and Atomic Workers' International Union, AFL–CIO ("the international union"); and Local 7–776, Oil Chemical and Atomic Workers' International Union ("Local 7–776" or "the union"). After being injured in an armed robbery, Mr. Braxton collected disability benefits for several years during the early 1980s. He never resumed

---

F.3d 953 (7th Cir.1999), Judge Ripple has not participated in the decision of this appeal.

* This appeal is successive to appeal no. 99–2143 and is being decided under Operating Procedure 6(b) by the same panel. After an examination of the briefs and the record, we have concluded that oral argument is unnec-

essary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

1. Mr. Braxton initially sued Amoco Petroleum Additives Company, but later amended his complaint to include Amoco Oil Company. We refer to both as "Amoco."

his job responsibilities, and Amoco ultimately terminated him sometime between 1987 and 1992 (the exact date remains in dispute).

The CBA required Amoco to notify Local 7–776 within four days of terminating a covered employee and also provided that the union must lodge any grievance within 31 days of the challenged event. Mr. Braxton alleges that Amoco failed to notify Local 7–776 within four days of his termination; he says that Amoco instead waited until October 6, 1992 to give the union a written employee-status report listing his termination date as September 1987. Mr. Braxton further contends that, beginning on January 21, 1993, his former counsel submitted numerous written requests to the union asking it to file a grievance on his behalf. When the union finally filed a grievance on September 23, 1993, Amoco rejected it as untimely under the CBA; the union notified Mr. Braxton of the denial on November 1, 1993.

Mr. Braxton filed this suit on April 29, 1994, and his final amended complaint raises several claims, only two of which he still pursues: that Amoco breached the CBA and that Local 7–776 breached its duty of fair representation. The district court previously granted summary judgment for Local 7–776 after concluding that Mr. Braxton presented no evidence of bad faith on the part of the union, and that the union could not have acted arbitrarily in failing to file a timely grievance because the evidence established that Mr. Braxton's demand for a grievance was itself untimely. The district court then dismissed the claim against Amoco based solely on the entry of summary judgment for the union. Mr. Braxton appealed, and we held that the district court's grant of summary judgment in favor of Local 7–776, and thus also the dismissal of Amoco, had been improper because the court relied on disputed facts. *See Braxton*, 1999

WL 1256565, at *4. We further noted, however, that the record appeared to support summary judgment on the alternate basis of the statute of limitations, a defense the defendants had not adequately raised. Not surprisingly, then, the defendants on remand immediately filed a motion for summary judgment, asserting that Mr. Braxton's claims were untimely, and the district court granted the motion.

II

ANALYSIS

Mr. Braxton's interdependent claims are commonly characterized as a "hybrid" claim under § 301 of the Labor Management Relations Act, *see* 29 U.S.C. § 185; *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and such a claim is governed by a six-month statute of limitations, *Chapple v. National Starch & Chem. Co. & Oil*, 178 F.3d 501, 505 (7th Cir.1999). The six-month limitations period begins to run when "a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Id.* at 505 (internal quotation marks and citation omitted). If a CBA mandates that the union file a grievance within a specified time period, the union's failure to do so constitutes a "final decision" and triggers the running of the statute of limitations. *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir.1999).

At the absolute latest, the 31–day period for Mr. Braxton to file a grievance began running on January 21, 1993, when his attorney–aware that Amoco had informed Local 7–776 of Mr. Braxton's termination–sent a written demand that the union file a grievance. The union's failure to act with-

in 31 days constituted a "final decision," and thus the six-month statute of limitations began to run when Mr. Braxton knew or should have discovered this decision. Because Mr. Braxton waited over 14 months to file his suit, his complaint necessarily was untimely because he had to have known long before he filed suit that Local 7–776 had not acted on his demand to file a grievance.

Mr. Braxton's contrary arguments are unpersuasive. He argues, for instance, that the 31–day period never began to run because Amoco never provided "official" notice of his termination to the union. He also asserts that Amoco never officially terminated him, but rather refused to allow him to return to work. The CBA actually provides, however, that any grievance must be filed within 31 days of *the challenged event*—here, Mr. Braxton's termination. And though in our previous order we noted without deciding that the CBA arguably could be construed to require notice of Mr. Braxton's termination to the union before the 31–day grievance period began, *Braxton*, 1999 WL 1256565, at *4, Mr. Braxton admits that Amoco sent the union final notification of his termination in October 1992. In all probability, that is the point the 31–day period began even if its running was conditioned on notice to the union. Moreover, giving Mr. Braxton the benefit of every doubt, the grievance period had to be running by January 21, 1993, because by that date Mr. Braxton had engaged counsel to demand that the union file a grievance to challenge the termination.

Mr. Braxton further maintains that the six-month limitation period did not begin to run until November 1, 1993, when he learned that Amoco had denied the untimely grievance filed by the union. But, as we have said, the statute of limitations begins running when a plaintiff discovers or should have discovered with reasonable diligence that the union was not planning to take further action. *Chapple,* 178 F.3d at 505. Once Mr. Braxton requested that the union file a grievance on his behalf, he was not entitled to "sit back and claim lack of notice," especially given the "strong federal policy favoring the prompt resolution of labor disputes." *Metz v. Tootsie Roll Indus.,* 715 F.2d 299, 304 (7th Cir.1983). At some point more than six months before Mr. Braxton filed this action, he should have discovered that no further action would be taken. *See id.* Indeed, he was necessarily aware that the union passed by the 31–day deadline because, for a nine-month period after the initial request for a grievance, his attorney continued to send written letters demanding that the union take action.

Finally Mr. Braxton argues that previously in this litigation both the district court and the international union affirmatively recognized that the six-month limitation period began on November 1, 1993, rendering his complaint timely. We first note that the international union is no longer a party to this lawsuit, having been dismissed without appeal in October 1997. Nonetheless, Mr. Braxton's contention has no bearing on the issue in this appeal. He cites to the international union's motion to dismiss his third amended complaint on timeliness grounds; the international union accepted as true Mr. Braxton's allegation that the statute of limitations did not begin to run until he learned in November 1993 that his grievance had been denied but argued that Mr. Braxton's claim was still too late because the international union was not added as a defendant until more than six months later. In granting the motion the district court also accepted Mr. Braxton's time line in evaluating the statute-of-limitations claim. But acquiescence by the international union, and by the district court in ruling on the international union's motion to dismiss, did not establish the validity of Mr. Braxton's view

that the statute of limitations did not begin running until November 1993; rather the international union and the district court assumed for purposes of the motion to dismiss that Mr. Braxton had accurately represented the beginning date of the limitations period. As the case progressed, however, it became clear that the statute of limitations began running when Mr. Braxton should have discovered that the union failed to file a grievance within 31 days of his attorney's request. And that date was plainly more than six months before he filed suit against Amoco and Local 7–776.

Accordingly, we AFFIRM the judgment of the district court.