NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 16, 2015
Decided March 3, 2016

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-2317

| | |
|---|---|
| RICHARD D. LEWIS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 13 C 530 |
| DOMINICK'S FINER FOODS, LLC, *Defendant-Appellee*. | Harry D. Leinenweber, *Judge*. |

**O R D E R**

Richard Lewis had worked as a butcher at Dominick's for 26 years when he was suspended for not telling the company that his absences from several scheduled shifts had occurred because he was in jail after being charged with murder. After his union tried unsuccessfully to get Lewis reinstated, he sued Dominick's and the union claiming that, because his arrest and brief stint in jail had been unrelated to his job performance, the suspension violated the collective bargaining agreement's prohibition against suspensions "without just cause." Lewis later voluntarily dismissed the union as a defendant, but he could not recover from Dominick's for its alleged violation of the CBA without also establishing, in this "hybrid" action under § 301 of the Labor Management

Relations Act, *see* 29 U.S.C. § 185(a), that the union had breached its duty of fair representation. *See Olson v. Bemis Co., Inc.*, 800 F.3d 296, 299 (7th Cir. 2015). In granting summary judgment for Dominick's, the district court concluded that a jury could not reasonably find from the evidence that the union had breached that duty or engaged in "unreasonable or irrational" conduct. We agree with that reasoning and further conclude that Lewis did not file his complaint within the 6-month statute of limitations for hybrid claims.

At summary judgment Lewis failed to comply with N.D. Ill. Local R. 56.1 in responding to Dominick's statement of material facts, so the district court accepted the defendant's factual presentation as uncontested. We likewise disregard Lewis's submission. *See Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) ("This Court has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1."). Unless otherwise noted, the following facts are undisputed and presented in the light most favorable to Lewis as the party opposing summary judgment. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015); *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 849 (7th Cir. 2015).

Lewis shot and killed his neighbor in August 2011. He was charged with first-degree murder and held in jail for three weeks until he made bond. Eventually, after a bench trial, Lewis was convicted of second-degree murder but sentenced only to probation. At his criminal trial Lewis claimed that he had acted in self-defense. He explained that he was driving his granddaughter home when the neighbor approached his car in what Lewis interpreted as a threatening manner. Lewis warned the neighbor to stay away and then shot him when he continued approaching the car.

During the three weeks before he made bond, Lewis did not call his supervisor to report his absences from several shifts. According to his union, Lewis missed a total of five shifts, and although his brother alerted the supervisor about three of those absences, no one called Dominick's about the other two. Dominick's wrote Lewis asking him to contact human resources to state whether he intended to return to work. Lewis contacted the store after he was released from jail and, accompanied by his union representatives, met with a Dominick's employee. On the advice of his criminal lawyer, Lewis refused to disclose why he had been arrested, and Dominick's suspended him.

Lewis's union filed a first grievance in late September 2011 challenging his suspension. After Dominick's failed to respond, the union filed a second grievance in October. A month later Dominick's denied both grievances because it had learned about the murder charge and the condition of Lewis's bond forbidding his possession of

dangerous weapons. Dominick's said that, before the company could allow Lewis to return to work, it would need more information to ensure that he would not be a safety threat.

A week later, at the end of November 2011, the union filed a third grievance asking Dominick's to specify what information it needed before Lewis could return to work. In denying this grievance Dominick's asserted that Lewis was hindering the company's "just cause investigation" by not speaking with company representatives about the shooting. Dominick's again told Lewis that the company could not allow him to return to work before investigating whether he posed a safety threat. At the end of December 2011, the union responded with a fourth grievance, this time noting that Lewis's bond conditions did not forbid him from working as a butcher. The union included an order from the presiding judge in the criminal case clarifying that Lewis could continue working as a butcher while on bond. Dominick's replied that this submission still did not contain sufficient information. The union countered with a fifth grievance in January 2012, asking again what further information was needed. On February 10, 2012, Dominick's denied this grievance, too, with the explanation that the company wanted more information about Lewis's arrest.

The union continued to press Lewis's position in a February 2012 grievance to Dominick's. The company replied in March that Lewis's stay in jail was not a valid excuse for his absences and that further explanation of the events surrounding the shooting still was necessary to ensure that Lewis was not a safety threat. The union then sent Lewis a letter dated March 19, 2012—apparently in response to a letter from him that is not part of the record—explaining its many grievances and Dominick's responses and promising to monitor the situation.

At some point the attorney representing Lewis in this civil matter sent an undated letter to Dominick's and the union proposing a settlement and asserting that the shooting had been in self-defense. The lawyer also mentioned, but did not send with his letter, what he characterized as an "affidavit" from Lewis explaining the shooting (in fact, this "affidavit" was not sworn or even signed by Lewis). Neither the union nor Dominick's responded. At his deposition Lewis asserted that counsel's letter was sent in August 2012, but there is no evidence to corroborate this hearsay assertion.

Lewis filed suit against the union and Dominick's in January 2013. He amended his complaint four times. In the final, operative version (entitled "Third Amended Verified Complaint" and filed in February 2014), Lewis alleged that Dominick's had suspended him without just cause in violation of the CBA, and that the union had

breached its duty of fair representation by not continuing to grieve his suspension after writing him in March 2012 and by not answering his attorney's undated letter.

One of the earlier versions of Lewis's complaint had been dismissed by the district court on the company's motion. The court agreed with Dominick's that Lewis's complaint failed to state a § 301 claim, but the court rejected the company's argument that a § 301 claim was barred by the statute of limitations. The court reasoned that the statute of limitations—requiring that hybrid suits be filed within 6 months after the final decision on a grievance or after the employee has learned that no further action will be taken on his grievance—was tolled by the lawyer's undated letter, which the court assumed had been sent in August 2012. Dominick's reasserted its statute-of-limitations defense at summary judgment. The district court declined, though, to "revisit this argument because, even if Lewis' Complaint is not time-barred, he has failed to establish that the Union breached its duty, which is fatal to his claim against Dominick's." The district court reasoned that the union's conduct "could not possibly be construed as unreasonable or irrational." Rather, the court said, the union had continually pressed Lewis's case with Dominick's. The district court rejected Lewis's contention that the union should have submitted additional grievances after learning that he would not go to prison for the murder. This theory, the court reasoned, could not be encompassed by Lewis's § 301 claim because he was not sentenced to probation until 6 months after he filed suit against Dominick's. And, the court continued, Lewis could not use his opposition to the company's motion for summary judgment as a means to amend his complaint yet again.

On appeal Dominick's reasserts its contention that this § 301 claim was doomed from the start because it was time-barred. Hybrid claims must be brought within 6 months. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983); *Flores v. Levy Co.*, 757 F.2d 806, 808 (7th Cir. 1985). The clock starts running when the employee knows or should have known that "'no further action would be taken on his grievance.'" *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 751–52 (7th Cir. 2014) (quoting *Chapple v. Nat'l Starch & Chem. Co.*, 178 F.3d 501, 505 (7th Cir. 1999). Lewis knew or should have known long before even the union's March 2012 letter that there was nothing else the union could do because the CBA sets a 15-day deadline for bringing grievances about a suspension.

Contrary to the district court's assertion, the undated letter from Lewis's lawyer to the union and Dominick's could not have tolled the statute of limitations (no matter when it was sent) because that letter proposing a "settlement" was not equivalent to

pursuing the union's internal grievance procedures. *See Frandsen v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 782 F.2d 674, 681 (7th Cir. 1986) (explaining that statute of limitations is tolled by "pursuit of internal union remedies"). This was a settlement letter, and a plaintiff's correspondence outside the grievance procedure cannot toll the time-bar. *See Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 916–17 (7th Cir. 1999) (explaining that limitations period is not tolled by continually asking union representative about status of grievance); *Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 329 (7th Cir. 1992) (concluding that employee's letter to international union "failed to invoke any specific internal union remedies, and thus did not toll the statute of limitations"); *Sosbe v. Delco Elec. Div. of Gen. Motors Corp.*, 830 F.2d 83, 87 (7th Cir. 1987) (noting that employee's "[c]ontinued correspondence with the union" is not equivalent to invoking internal grievance procedure and does not toll 6-month limitations period). Lewis tries to frame his lawyer's letter as part of the grievance process because he was responding to Dominick's requests for details about his arrest. The letter, though, does not invoke any part of the grievance procedure or even mention the CBA.

Additionally, the absence of a further response from the union after its March 2012 letter to Lewis cannot be characterized as a "continuing violation" that would toll the statute of limitations. "[T]here is no continuing violation sufficient to delay the statute of limitations if the conduct within the six month period is only unlawful in light of conduct outside of the six month period." *See Christiansen*, 178 F.3d at 915 (citing *Local No. 1424, Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411, 421–23 (1960), and *Lewis v. Local Union 100*, 750 F.2d 1368, 1378–79 (7th Cir. 1984)); *see also Adams v. Budd Co.*, 846 F.2d 428, 431–32 (7th Cir. 1988) (explaining that "[c]ontinued union inactivity after an initial failure to respond to a grievance does not constitute a continuing violation" that tolls the statute of limitations).

Apart from Lewis's suit being time-barred, the district court was correct in concluding that a jury could not reasonably find that the union breached its duty of fair representation. Lewis argues that the union breached that duty by not responding to his lawyer's undated letter or submitting another grievance in July 2013 after he was sentenced to probation for the murder. A union's decision not to further pursue a grievance will constitute a breach of the statutory duty of fair representation only if that decision was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *see Xiong v. Fischer*, 787 F.3d 389, 394–96 (7th Cir. 2015). To satisfy this standard Lewis needed, but did not introduce, evidence that the union acted outside the range of reasonableness or that a union official's motives were improper. *See Air Line Pilots*

*Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 866 (7th Cir. 2009). On this record a jury could not conclude that the union was unreasonable or improperly motivated in deciding not to respond to counsel's settlement letter. The union already had filed six grievances challenging Lewis's suspension, and there was no further step in the CBA's grievance procedure for the union to take. Grievances challenging a suspension must be submitted within 15 days, and any grievance submitted after that time limit "shall be nullified." A further grievance after the settlement letter would have been outside the grievance procedure's time limit. The same is true for Lewis's contention that the union should have filed a grievance in July 2013.

Accordingly, the judgment of the district court is AFFIRMED.