# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2964

ROBERT YEFTICH, et al.,

*Plaintiffs-Appellants,*

*v.*

NAVISTAR, INC., and
INDIANAPOLIS CASTING CORP.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-cv-01045—**Sarah Evans Barker**, *Judge.*

ARGUED FEBRUARY 27, 2013—DECIDED JUNE 18, 2013

Before FLAUM and SYKES, *Circuit Judges.**

SYKES, *Circuit Judge.* We review here the dismissal of a complaint filed by a group of unionized workers at a Navistar engine plant in Indianapolis, Indiana. The

---

* Circuit Judge John Daniel Tinder recused himself and did not participate in the decision of this appeal, which is being resolved by a quorum of the panel. *See* 28 U.S.C. § 46(d).

plaintiffs alleged that they were laid off by Navistar and not rehired as work became available because the company had actually subcontracted their work to nonunion plants in contravention of the governing collective-bargaining agreement. The workers brought this action against Navistar under section 301 of the Labor Management Relations Act ("LMRA") for breach of the collective-bargaining agreement.

A successful section 301 claim requires not only a breach of contract by the employer but also a breach by the plaintiffs' union of its duty of fair representation. The latter is required because the union is responsible for representing its members' interests and addressing their complaints pursuant to whatever grievance process is set up by the relevant collective-bargaining agreement. Only when the union fails to carry out that duty may union members pursue section 301 litigation against their employer. To satisfy this requirement, the plaintiffs alleged that they filed grievances challenging Navistar's subcontracting of work but the union intentionally failed to process the grievances in breach of its duty of fair representation. The district court held that the complaint lacked enough factual content to plead a plausible claim for breach of the duty of fair representation and therefore dismissed the LMRA claim.

We affirm. The complaint identifies the elements of a duty-of-fair-representation claim and contains allegations that each element is satisfied. But we agree with the district court that because the allegations are almost all conclusory, the complaint lacks the necessary factual

content to state a plausible claim under section 301 of the LMRA.

## I. Background

The plaintiffs are union members who worked for Navistar, Inc., and its wholly owned subsidiary Indianapolis Casting Corp. (collectively, "Navistar"), at its engine-manufacturing plant in Indianapolis. They were represented for collective-bargaining purposes by the United Auto Workers, Local Union Nos. 98 and 226, and their employment was subject to the terms of a collective-bargaining agreement and related letters of agreement and other contract documents (collectively, the "CBA").

The plaintiffs alleged that on unidentified dates they were laid off from their jobs at the plant, ostensibly for lack of available work, but Navistar actually subcontracted their work to nonunion plants in contravention of the CBA. They also alleged that Navistar failed to recall them as work became available, also in contravention of the CBA. They claim to have filed hundreds of grievances with the union and were assured by unnamed union officials that the grievances were being processed. Instead, the grievances were actually diverted or stalled. On January 27, 2009, Navistar informed the union that it would be closing the Indianapolis plant; the plaintiffs allegedly heard this news at some point after the union did. By August 2009 the plant was closed.

The plaintiffs filed suit against Navistar under section 301 of the LMRA, 28 U.S.C. § 185, alleging breach

of the CBA. When union members sue their employer for breach of contract under section 301 of the LMRA, they must also state a prerequisite claim of breach of their union's duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 186-87 (1967); *Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 914-16 (7th Cir. 1989). This is because ordinarily, union members must first use the grievance procedures specified in the CBA rather than directly sue the employer; only when the union has breached its duty to fairly represent the union members in that grievance process may the union members bring a claim against their employer. *See, e.g.*, *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983). In other words, a section 301 suit is a "hybrid" claim consisting of both a breach-of-fair-representation element and a breach-of-contract element. *Id.* at 163-65. The breach-of-fair-representation requirement applies whether or not the plaintiffs name the union as a defendant in their LMRA suit.

The district court dismissed the LMRA claim for failure to state a claim, reasoning that the plaintiffs had failed to adequately plead sufficient facts regarding the prerequisite element of the union's breach of its duty to fairly represent its members. The court explained that most of the plaintiffs' allegations in this respect were conclusory, and the closest thing to a specific factual allegation—that an unnamed union official told the plaintiffs that their claims were being processed when this was not true—was insufficient to state a claim that the union breached its duty of fair representation. A separate interference-with-benefits

claim under the Employment Retirement Income Security Act of 1994 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, was later resolved by summary judgment in favor of Navistar.

The plaintiffs appealed, initially seeking review of the court's orders on both the LMRA and ERISA claims. Since then, 14 of the 43 plaintiffs abandoned their appeal; we granted their counsel's motion to withdraw and dismissed their appeal for failure to prosecute. The remaining plaintiffs press only the LMRA claim, focusing specifically on the union's failure to fairly represent them, so that is the sole issue we address here. Because our resolution of the duty-of-fair-representation issue is dispositive, we do not address Navistar's alternative arguments for affirmance, including failure to state a breach-of-contract claim and failure to exhaust administrative remedies.

## II. Analysis

We review a Rule 12(b)(6) dismissal de novo, construing the complaint in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts and drawing reasonable inferences in the plaintiffs' favor. FED. R. CIV. P. 12(b)(6); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). However, we need not accept as true statements of law or unsupported conclusory factual allegations. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). In such a case, the inference of liability is merely speculative. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

Here, the district court held that the plaintiffs failed to state a section 301 claim against their employer because they had not adequately alleged the prerequisite breach by the union of its duty of fair representation. "When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty . . . to represent all members fairly." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). This duty exists through the negotiation of a collective-bargaining agreement and during the administration of the agreement, *see, e.g.*, *Thomas*, 890 F.2d at 917-18, 922; *Schultz v. Owens-Ill. Inc.*, 696 F.2d 505, 514 (7th Cir. 1982), and the union's obligation throughout is "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct," *Vaca*, 386 U.S. at 177. A union has wide latitude in per-

forming this obligation, however. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190. "Each of these possibilities must be considered separately in determining whether or not a breach has been established." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). For example, declining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation. Rather, "[t]o prevail on a claim that his union violated its duty of representation by dropping a grievance, a plaintiff-member must show that the union's decision was arbitrary or based on discriminatory or bad faith motives." *Trnka v. Local Union No. 688, UAW*, 30 F.3d 60, 61 (7th Cir. 1994).

The plaintiffs focus on bad faith and arbitrariness, arguing that the allegations in their complaint are sufficient to give rise to an inference that the union arbitrarily and in bad faith treated their grievances perfunctorily or not at all. The complaint generally alleges that the union knew that Navistar had acted in contravention of the CBA and also contains the following superficially more specific allegations: the plaintiffs filed hundreds of grievances about Navistar's actions "in a continuous and continuing basis through to the present"; the union "intentionally mis[led] the [p]laintiffs as to the status of the grievances when in fact the [u]nion[] invidiously diverted, stalled, and otherwise terminated and abandoned the grievances"; the union "mis[led] the [p]laintiffs by telling them that hundreds of such griev-

ances filed over a period of years await further action by high [u]nion officials when in fact, upon information and belief, none have been processed and all are dead"; and the union refused to give the plaintiffs copies of the CBA.

Against the *Twombly/Iqbal* plausibility standard, these allegations are insufficient to state a claim for breach of the duty of fair representation. Although the plaintiffs generally allege that the union is guilty of bad faith because it "diverted, stalled, and otherwise terminated" their grievances, the complaint lacks the factual specificity required to state a plausible breach-of-fair-representation claim.

"Whether or not a union's actions are . . . in bad faith calls for a subjective inquiry and requires proof that the union acted (or failed to act) due to an improper motive." *Neal*, 349 F.3d at 369. Bare assertions of the state of mind required for the claim—here "bad faith"—must be supported with subsidiary facts. *See Iqbal*, 556 U.S. at 680-83. The plaintiffs offer nothing to support their claim of bad faith apart from conclusory labels—that the unnamed union officials acted "invidiously" when they failed to process the grievances, or simply that the union's actions were "intentional, willful, wanton, and malicious." They supply no factual detail to support these conclusory allegations, such as (for example) offering facts that suggest a motive for the union's alleged failure to deal with the grievances. Deceptive actions can be evidence of bad faith, *see Humphrey v. Moore*, 375 U.S. 335, 348 (1964) (suggesting

that "fraud, deceitful action or dishonest conduct" can be evidence of bad faith), but the plaintiffs have not gone beyond their conclusory state-of-mind allegations.

Nor do the plaintiffs offer plausible allegations of arbitrariness. "Whether a union's actions are arbitrary calls for an objective inquiry." *Neal*, 349 F.3d at 369. "[T]he arbitrary prong of the fair representation analysis is very deferential . . . because Congress did not intend courts to interfere with the decisions of the employee's chosen bargaining representative." *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992). "A union's actions are arbitrary 'only if . . . the union's behavior is so far outside a wide range of reasonableness' as to be irrational." *Filippo v. N. Ind. Pub. Serv. Corp.*, 141 F.3d 744, 749 (7th Cir. 1998) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (omission in original) (citation and quotation marks omitted)). While "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," *Vaca*, 386 U.S. at 191, it "has discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer," *Neal*, 349 F.3d at 369. "The union must provide some minimal investigation of employee grievances, but the thoroughness of this investigation depends on the particular case, and only an egregious disregard for union members' rights constitutes a breach of the union's duty." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995) (internal quotation marks and citations omitted).

The plaintiffs generally allege an arbitrary failure to act on their grievances ("upon information and belief, none have been processed and all are dead"), but factual detail in support of this otherwise conclusory allegation is entirely missing. For example, the plaintiffs do not identify who filed the grievances, give dates or even a time frame across which grievances were filed, or otherwise describe the contents of the grievances. They do not identify which union officials told which plaintiffs that their grievances were being processed, nor do they specify when these conversations occurred. And perhaps most importantly, they do not explain how long they waited after filing a grievance before concluding that it had been abandoned, or how they knew that such a wait time was an abnormal and arbitrary delay. Without at least *some* background factual content, the complaint's allegations about "abandoned" or "dead" grievances are wholly conclusory.

The complaint does allege that the union lied to the plaintiffs, saying that the grievances were being processed when in fact they weren't. Dishonesty can be evidence of bad faith, and a lack of action on grievances can be evidence of arbitrariness. But absent some specific factual detail to color these bare conclusory allegations, the complaint does not plausibly state a claim under section 301 of the LMRA. It bears repeating that the union enjoys substantial discretion in fulfilling its duty of fair representation. *See Neal*, 349 F.3d at 369. Against this backdrop principle, the complaint's skeletal allegations simply mirroring the elements of a section 301 bad-faith claim are not enough to take the plaintiffs' complaint

over the line from a "possible" to a plausible claim of entitlement to relief. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557, 570. The district court properly granted Navistar's motion to dismiss.

AFFIRMED.