In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1085

OSAMA TAHA,

*Plaintiff-Appellant,*

*v.*

INTERNATIONAL
BROTHERHOOD OF
TEAMSTERS, Local 781,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-01201 — **Charles P. Kocoras**, *Judge.*

ARGUED SEPTEMBER 19, 2019 — DECIDED JANUARY 13, 2020

Before SYKES, HAMILTON, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Federal law imposes a duty on unions to fairly represent all employees in their bargaining units. Osama Taha sued his union, arguing it breached that duty after his employer fired him for abandoning his job. Although the union grieved Taha's firing, he alleges it did so unfairly. He also contends the union wrongfully shut down his

grievance process. The district court dismissed Taha's second amended complaint for failure to state a claim, finding it gave no details to support any allegation of unlawful union conduct. Our review compels the same conclusion. Because Taha's complaint fails to state a plausible claim for relief, we affirm.

**I**

United Airlines hired Taha in 1988 and laid him off in 2003. He retained recall rights to his position under a collective bargaining agreement ("CBA") between the airline and his union, the International Brotherhood of Teamsters, Local 781. After a twelve-year furlough, United offered Taha an opportunity to return to work at O'Hare Airport in Chicago, which he accepted.

About three weeks into this new job, Taha learned his mother had suffered a heart attack. Because she lived in Saudi Arabia, Taha asked for time off to travel and care for her. Taha wanted six months; United gave him 30 days. He sought to extend his leave by reaching out to several people for help, among them Carla Starck, a human resources representative with United. Starck told Taha that United's operations management department had the final say on an extension. Taha also spoke with the union's president, Paul Stripling, who told him to trust in the union's process.

United denied Taha's extended-leave request in a letter sent to his home in Indiana. But Taha never saw it, as he remained in Saudi Arabia throughout his leave. Nor did he return to work, which the airline construed as job abandonment. Three months after United expected Taha back on the job, he was fired.

Taha grieved his firing through the union. The CBA required Taha, with the union's help, to first attempt to resolve the dispute through a series of informal exchanges with United. Those exchanges included supervisor discussions as well as a written complaint and answer process. After that, if the dispute remained unsettled, the CBA required Taha and United to take the grievance before a body known as the Joint Board of Adjustment ("JBA"). Taha's grievance culminated in a JBA hearing, and Stripling represented Taha in that proceeding.

The JBA unanimously denied Taha's grievance. Stripling notified Taha about the JBA's decision in a letter saying: "The board has denied your grievance. Good luck in your future endeavors." In response, Taha asked the union to demand arbitration from United. But the union showed no urgency in answering him, waiting over six months to reply. When the union finally responded, it explained that the CBA barred further pursuit of his grievance.

Taha then sued the union, alleging it breached its duty to fairly represent him under the Railway Labor Act, 45 U.S.C. §§ 151–188.[1] His pleadings proceed in pairs. He filed two amended complaints, with the second alleging two separate incidents: the union's handling of his JBA hearing, and its post-hearing refusal to arbitrate. He also pleaded only two facts to support his breach claims: (1) before the JBA hearing began, Taha overheard Stripling and Starck "chatt[ing] genially" about Starck acquiring airline tickets for some of Stripling's friends; and (2) during the hearing, Stripling "told Taha

---

[1] The Railway Labor Act governs unions in the air transportation business. *See* 45 U.S.C. § 181.

to remain silent" and "prevented Taha from presenting several strong and important exhibits."

The union moved to dismiss Taha's second amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing it failed to allege enough facts to support an unfair representation claim. It also argued Taha's complaint was time-barred. The district court agreed with the union and dismissed Taha's complaint for both reasons. This appeal followed.

## II

We begin our analysis with the Rule 12(b)(6) dismissal before turning to the timeliness of Taha's complaint.

The dismissal of a complaint under Rule 12(b)(6) warrants de novo review. *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). We construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (affirming Rule 12(b)(6) dismissal of unfair representation claim).

Federal Rules of Civil Procedure 8 and 12 set the conditions for a sufficient pleading. Rule 8(a)(2) says a complaint "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint falls short of this requirement, it risks dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." A claim satisfies Rule 8(a)(2)—and avoids dismissal under Rule 12(b)(6)—if the complaint alleges facts that show the claim is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 8(a)(2) prescribes what a pleading must show; *Twombly* and *Iqbal* clarify that rule's demands. In the wake of those cases, a complaint must include facts showing a plausible—not merely "conceivable"—entitlement to relief. *Iqbal*, 556 U.S. at 683. When a complaint's facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)). That means a complaint must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557) (internal brackets omitted). In keeping with these principles, when considering the viability of a claim in the face of a Rule 12(b)(6) challenge, we may reject sheer speculation, bald assertions, and unsupported conclusory statements. *See Yeftich*, 722 F.3d at 915; *Iqbal*, 556 U.S. at 678, 681; *Twombly*, 550 U.S. at 555.

## A

Taha argues the second amended complaint states a plausible unfair representation claim. To make that assessment, we must first say a few words about the source of the union's duty and the ways Taha alleges it was breached.

The duty of fair representation arises out of a union's role as the exclusive representative of all employees in a collective bargaining unit. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *see also Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th

Cir. 2018) (describing the duty as judicially implied under the Railway Labor Act). Because a union serves as the exclusive bargaining agent for those employees, it has a corresponding legal obligation "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id*.[2] That obligation applies equally to all aspects of representational activity. *Bishop*, 900 F.3d at 397.

Bringing those elements together, the duty of fair representation covers all union activity and a breach occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190 (extending duty to grievances and arbitration). Taha asserts arbitrary conduct and bad faith claims. On appeal, as in the district court, he argues each claim emerges out of the union's representation at the JBA hearing and its refusal to pursue arbitration against United. We must decide whether those claims meet the requirements imposed by Rule 8(a)(2). We begin with Taha's claim of arbitrary conduct.

**1**

A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*,

---

[2] *Vaca v. Sipes*, 386 U.S. 171 (1967), involves a National Labor Relations Act violation, while Taha asserts a violation of the Railway Labor Act. The duty of fair representation as articulated in *Vaca* applies interchangeably to claims under either statutory scheme. *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 n.22 (7th Cir. 2018).

499 U.S. 65, 67 (1991). A charge of arbitrary union conduct requires "an objective inquiry," *Yeftich*, 722 F.3d at 916 (citation omitted), and we apply an "extremely deferential standard" to the union's strategic choices, *McKelvin v. E.J. Brach Corp.*, 124 F.3d 864, 867 (7th Cir. 1997). *See Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1177 (7th Cir. 1995) ("We must defer to the [u]nion's strategic choices unless they are irrational."). At the pleading stage, Taha need not prove that the union acted irrationally; that said, he "must include enough details about the subject-matter of the case to present a story that holds together." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (citation and internal quotation marks omitted).

We start with whether Taha's second amended complaint showed an irrational refusal to arbitrate. Taha's second amended complaint says arbitration is "the next step" in his grievance process. That is incorrect. Article 19 of the CBA allows the union to arbitrate grievances only if the JBA deadlocks.[3] In Taha's case, the JBA's decision was unanimous, which means he reached the end of the line for his grievance options. *See Vaca*, 386 U.S. at 191 (holding no employee has "an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement"). Far from irrational, the union adhered to the CBA's terms when it declined Taha's arbitration demands, so we see no basis for reversal on that point.

---

[3] Although not attached to the complaint, the district court considered the CBA because it was referred to in the second amended complaint, undisputed, and central to Taha's claims. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Taha's claim of irrational representation at the JBA hearing fares no better. On appeal, he contends the union "compromised" his JBA hearing when it told him not to testify and ignored "several strong and important exhibits." The allegation that the union compromised his JBA hearing is missing from Taha's second amended complaint. Yet "[a] party appealing a Rule 12(b)(6) dismissal may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745-46 n.1 (7th Cir. 2012) (citations omitted). So we consider Taha's elaboration.

Three problems arise with Taha's claim. First, a predicate to a compromised JBA hearing is that the grievance was not a flop regardless of the union's role. To draw the reasonable inference of a compromised hearing, Taha must allege facts "plausibly suggesting (not merely consistent with)" a valid grievance. *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678. Taha need not prove at the pleading stage that United wrongly fired him. But he must "present a story that holds together," *Runnion ex rel. Runnion*, 786 F.3d at 526, and his "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Taha pleaded no basis, let alone a plausible basis, to challenge his firing. Nor does Taha explain in his complaint or on appeal why he believed he could remain on leave three months longer than United allowed. And he does not point to facts suggesting United improperly fired him or treated him differently than any other employee who refused to return to work. So we cannot plausibly infer that Taha encountered a compromised JBA hearing.

Second, in unfair representation claims, a "[f]ailure to present favorable evidence during the grievance process" constitutes a breach of duty "only if that evidence probably would have brought about a different decision." *Garcia*, 58 F.3d at 1177 (citation and internal quotation marks omitted). What evidence did the union adversely exclude here? Taha had chances to explain in two amended complaints, during the motion to dismiss proceedings, in two briefs on appeal, and even at oral argument. At each opportunity, he offered no explanation. Nor did Taha cite instances at his JBA hearing when this unidentified evidence might have been helpful. The complaint is silent on these critical details, and Taha offers no elaboration about them on appeal. Without any description of the excluded evidence, we cannot plausibly infer that such evidence might have swayed the JBA to reach a different decision.

Third, a "union is accorded considerable discretion in dealing with grievance matters." *Id*. at 1176 (deferring to union's decision not to allow plaintiff to testify on his own behalf). "[I]t is not our job to substitute our judgment for that of the [u]nion, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Id*. at 1177 (citation and internal quotation marks omitted). Here, Taha does not dispute that the union acted within its discretion when it excluded Taha's testimony and exhibits. Nor does he explain why the exclusion of that evidence was irrational. As above, answering that question hinges on what the excluded evidence would have shown. But Taha gives no answer to any of these inquiries, so we lack any basis to infer the union acted irrationally or outside the bounds of its discretion.

Because Taha pleaded no factual details to support his claim that the union irrationally compromised his JBA hearing, and because he did not fill in those gaps in the district court or this court, we see no reason to disturb the district court's resolution of this issue.

**2**

Taha also failed to plead a plausible bad faith claim. Whether a union acted in bad faith calls for a subjective inquiry and requires proof the union acted (or failed to act) due to an improper motive. *Yeftich*, 722 F.3d at 916. A conclusory allegation of bad faith conduct, without more, does not show illegality. *See Twombly*, 550 U.S. at 556–57. Put another way, Taha must allege "more than a sheer possibility" that the union acted unlawfully. *Iqbal*, 556 U.S. at 678.

But "sheer possibility" is all Taha has offered. Taha presses only one fact to support his charge of bad faith conduct: Stripling and Starck discussed airline tickets before the JBA hearing. Yet he does not allege a causal or even correlative relationship between that conversation and the quality of Stripling's representation. Nor does he link the Stripling/Starck conversation to the union's refusal to pursue arbitration. *Twombly* instructs plaintiffs to "nudge[] their claims across the line from conceivable to plausible." 550 U.S. at 570. Taha's claims backslide from conceivable to plumb speculation when he concedes: "Why the [u]nion representative folds is not entirely clear—quid pro quo for the airline tickets, or perhaps some other motive lurks." Br. of Plaintiff-Appellant Osama Taha 13, ECF No. 23. This conjecture also assumes the union "folded" without any facts to support that allegation. Rule 8(a)(2) requires a plaintiff to state more than raw guesswork to survive a Rule 12(b)(6) challenge. Because Taha never

elevates his bad faith claim from speculative to plausible, the district court properly dismissed it.

**B**

The district court also dismissed Taha's complaint as time-barred. A duty of fair representation claim is governed by a six-month statute of limitations, *Renneisen v. Am. Airlines, Inc.*, 990 F.2d 918, 925 (7th Cir. 1993), which accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered," the alleged breach, *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999). Here, the parties dispute when Taha's claim accrued.

We need not answer this accrual question, however, for we agree with the Rule 12(b)(6) grounds on which the district court resolved this case. *See, e.g., Antrim v. Burlington N., Inc.*, 847 F.2d 375, 377 (7th Cir. 1988) (declining to consider timeliness of unfair representation claim—even when it appeared "unlikely that the suit is timely"—and affirming dismissal on separate grounds). A dismissal under Rule 12(b)(6) is an adjudication on the merits. *Davis v. Lambert*, 388 F.3d 1052, 1058 (7th Cir. 2004). On the other hand, the statute of limitations for an unfair representation claim is a non-jurisdictional affirmative defense. *Antrim*, 847 F.2d at 377. There is no reason to reach a non-jurisdictional timeliness issue when a plaintiff cannot succeed on the merits, *see Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 752 (7th Cir. 2002), so we express no opinion on when Taha's claims accrued.

### III

A complaint must state a plausible claim showing that the pleader is entitled to relief. Taha's second amended complaint fails to meet this standard, so we AFFIRM.