In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1593
SYLVESTER WINCE,
 Plaintiff-Appellant,
 v.

CBRE, INC., et al.,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 1:19-cv-01546 — Steven Charles Seeger, Judge.
 ____________________

 ARGUED NOVEMBER 8, 2022 — DECIDED MAY 2, 2023
 ____________________

 Before SYKES, Chief Judge, and WOOD and SCUDDER, Circuit
Judges.
 WOOD, Circuit Judge. Sylvester Wince worked for almost
two decades maintaining buildings and repairing equipment
at Northwestern Memorial Hospital. Wince, who is Black, ar-
gues that his employer, CBRE, Inc., racially discriminated
against him and then constructively discharged him. But at
the summary judgment stage, Wince had to back up these
2 No. 22-1593

serious allegations with evidence. Because he failed to do so,
we aﬃrm.
 I
 In 2001, Wince began work as a maintenance mechanic in
the facilities department at Northwestern Memorial Hospital.
Initially, he worked as an employee of the Hospital, but in
2010 Northwestern decided to contract with an outside firm
to provide these services; it chose CBRE. After the hand-oﬀ,
CBRE allowed Wince to keep his job under a new title, Sta-
tionary Engineer. His duties included preventative mainte-
nance, equipment repairs, and less technical tasks such as
plumbing. Wince is well-qualified for the position; he is a li-
censed Stationary Engineer, has a bachelor’s degree in organ-
izational science, and holds certificates in electricity, air qual-
ity, and refrigeration. Collective bargaining agreements be-
tween CBRE and the International Union of Operating Engi-
neers of Chicago, Illinois and Vicinity Local 399 (the Union)
governed Wince’s employment.
 Wince alleges that CBRE and some of its employees ra-
cially discriminated against him. First, he complains that
CBRE denied him a promotion because of his race. Generally,
the path for internal promotion of Stationary Engineers at
CBRE is hierarchical: a person first becomes Lead Engineer,
next Assistant Chief Engineer, and then Chief Engineer. In
2015, although he had no prior experience as a Lead Engineer,
Wince applied for a position as an Assistant Chief Engineer at
Northwestern’s Lavin Family Pavilion; in so doing, he was in
eﬀect asking to bypass the Lead Engineer level. CBRE did not
select him; the job went instead to Andrew Brudniak, who is
White. At the time, Brudniak worked as an Assistant Chief En-
gineer at Northwestern’s Prentice Women’s Hospital, and so
No. 22-1593 3

his move was a lateral transfer. Like Wince, Brudniak held a
Stationary Engineer’s license and similar certificates in air
conditioning, heating, and refrigeration.
 In 2016, CBRE rebid Brudniak’s position. Both Wince and
Brudniak applied for the vacancy again, but CBRE rehired
Brudniak. Sean Holland, who was at the time the Director of
Facilities for CBRE at Northwestern, stated that management
selected Brudniak because of his previous tenure and perfor-
mance as Assistant Chief Engineer in the same pavilion.
 In further support of his race discrimination claim, Wince
testified that he was the subject of racist slurs and a discrimi-
natory nickname. In 2016 or 2017, unknown persons wrote the
n-word on his lunchbox, along with cruel phrases such as
“you don’t belong here” and “we don’t want you here.”
Wince never reported this spiteful incident to CBRE. He did,
however, informally take issue with the nickname his
coworkers gave him — “Sly,” short for Sylvester. He thought
the name was racially derogatory because, in his view, it sug-
gested he was sneaky. After Wince told his coworkers he dis-
liked the nickname, they stopped using it.
 Wince also accuses CBRE’s management of making com-
ments that revealed racial bias. During a meeting, Richard
Saulig, Director of Facilities, flatly told Wince, “[W]e don’t
like you.” On another occasion, Ernie Pierz, Alliance Director
of Facilities, told Wince that there were no leadership posi-
tions available, and so he was probably better oﬀ looking for
immediate promotions outside the company. Yet at the same
time, Pierz encouraged Wince to enroll in a project manage-
ment course and requested approval for unscheduled paid
time oﬀ to enable Wince to take the course.
4 No. 22-1593

 Wince finally claims that he filed various grievances accus-
ing CBRE of denying him holidays, overtime, promotions,
and paid time oﬀ, and that CBRE failed to address any of
them. In November 2018, Wince filed a charge of discrimina-
tion with the Equal Employment Opportunity Commission.
The EEOC dismissed the claim later that month and issued
Wince a Notice of Right to Sue.
 In March 2019, Wince filed this lawsuit against CBRE and
a number of its employees, individually and in their oﬃcial
capacities. The employees included Joe Hernandez (Senior
Manager of Facilities), Maya Nash (Human Resources Man-
ager), Sean Holland (Senior Manager of Facilities), Ernie Pierz
(Alliance Director of Facilities), Pedro Ravelo (Alliance Direc-
tor of Facilities), and Richard Saulig (Director of Facilities). He
included counts for racial discrimination and retaliation un-
der 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of
1964, as well as breach of the collective bargaining agreement,
the Fair Labor Standards Act, and the Illinois Wage Payment
and Collections Act. In the district court, he also argued that
CBRE denied him overtime, holidays, paid time oﬀ, bonus
payments, and other promotions. He does not pursue the lat-
ter claims on appeal, however, and so we do not address
them.
 The filing of the lawsuit did not put a stop to the discrim-
inatory acts, as Wince sees things. He contends that the day
after his filing, Chief Assistant Engineers Joe Hernandez and
Alejandro Corona gave him a verbal warning for failing to re-
spond to a work order about a water leak in a kitchen. The
warning came with no loss of pay or other tangible conse-
quence. Similarly, Wince complains that Hernandez unfairly
assigned him to clean drains, which Wince saw as a
No. 22-1593 5

demeaning trainee-level task. In October 2019, Wince quit
CBRE for a position as an HVAC supervisor at another hospi-
tal.
 In 2020, Wince amended his complaint to include these ad-
ditional accusations of discrimination, as well as a claim for
constructive discharge. The district court granted CBRE’s mo-
tion pursuant to Federal Rule of Civil Procedure 12(b)(6) to
dismiss the counts based on CBRE’s alleged breach of the col-
lective bargaining agreements, the Fair Labor Standards Act,
and the Illinois Wage Payment and Collections Act. After dis-
covery, the court granted summary judgment in favor of all
defendants with respect to Wince’s remaining discrimination,
retaliation, and constructive discharge claims.
 On appeal, Wince challenges only the court’s dismissal of
the claim based on the collective bargaining agreement and
its entry of summary judgment on the racial discrimination
and constructive discharge claims.
 II
 We can be brief with the alleged breach of the collective
bargaining agreement. We consider the court’s grant of a mo-
tion to dismiss under Rule 12(b)(6) de novo, viewing the com-
plaint in the light most favorable to the plaintiﬀ and accepting
all well-pleaded facts as true. Lax v. Mayorkas, 20 F.4th 1178,
1181 (7th Cir. 2021).
 The district court held that section 301 of the Labor Man-
agement Relations Act (LMRA) completely preempts Wince’s
state-law claim. See Caterpillar Inc. v. Williams, 482 U.S. 386,
393–94 (1987). Such a claim, the court correctly noted, is re-
garded as inherently federal; section 301 sweeps aside any
state law that purports to regulate the rights or liabilities
6 No. 22-1593

created by a collective bargaining agreement. See Healy v.
Metro. Pier & Exposition Auth., 804 F.3d 836, 841 (7th Cir. 2015).
 To succeed on a section 301 claim, a plaintiﬀ must allege
that he exhausted the relevant grievance procedures before
filing suit in federal court, and that the union breached its
duty of fair representation. See Yeftich v. Navistar, Inc., 722
F.3d 911, 913–14 (7th Cir. 2013).1 Such a breach occurs “when
a union’s conduct toward a member of the collective bargain-
ing unit is arbitrary, discriminatory, or in bad faith.” Vaca v.
Sipes, 386 U.S. 171, 190 (1967). Wince’s complaint alleged that
CBRE’s handling of his grievances fell below that standard.
But nowhere does his complaint explain what exactly CBRE
did (or failed to do) that was so deficient. Merely reciting the
elements of the claim is not enough to meet Rule (12)(b)(6)’s
standard. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The
district court correctly dismissed this part of Wince’s case on
the pleadings.

 1 Although Wince did not name the Union as a defendant, this does

not prevent us from considering his section 301 claim against CBRE. The
Supreme Court has held that “an employee may bring suit against both
the employer and the union” under section 301, but that “[t]he employee
may, if he chooses, sue one defendant and not the other.” DelCostello v. Int’l
Broth. of Teamsters, 462 U.S. 151, 164 (1983) (emphasis added); see also Yeft-
ich , 722 F.3d at 914 (“The breach-of-fair-representation requirement ap-
plies whether or not the plaintiffs name the union as a defendant in their
LMRA suit.”); Bell v. DaimlerChrysler Corp., 547 F.3d 796, 804 (7th Cir. 2008)
(“Whether the plaintiff has sued his employer, his union, or both … he
must prove that his union breached its fiduciary obligation and that his
employer breached the collective bargaining agreement.”) (citing
DelCostello, 462 U.S. at 165).
No. 22-1593 7

 III
 Next Wince argues that the district court erred in granting
summary judgment to the defendants on his federal racial dis-
crimination and state-law constructive discharge theories.
“We evaluate grants of summary judgment de novo, viewing
all facts in the light most favorable to the non-moving party.”
Miles v. Anton, 42 F.4th 777, 780 (7th Cir. 2022). A moving
party may prevail by showing an absence of evidence to sup-
port the nonmoving party’s claims. Tyburski v. City of Chicago,
964 F.3d 590, 597 (7th Cir. 2020) (quoting Parkey v. Sample, 623
F.3d 1163, 1165 (7th Cir. 2010)).
 A
 For race-discrimination claims at the summary judgment
stage, we look to see “whether the evidence would permit a
reasonable factfinder to conclude that the plaintiﬀ’s race …
caused the discharge or other adverse employment action.”
Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765 (7th Cir. 2016).
Wince may prove discrimination in a holistic fashion, by prof-
fering “direct or circumstantial evidence of intentional racial
discrimination.” See Bagwe v. Sedwick Claims Mgmt. Servs.,
Inc., 811 F.3d 866, 879 (7th Cir. 2016) (quoting Tank v. T-Mobile,
USA, Inc., 758 F.3d 800, 805 (7th Cir. 2014)). Alternatively, he
may rely on the burden-shifting framework under McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1973), “which gives the
plaintiﬀ the initial burden to establish a prima facie case of
discrimination, after which the burden shifts to the defendant
to provide a legitimate justification, before finally shifting
back to the plaintiﬀ to establish that such justification was pre-
textual.” Dunlevy v. Langfelder, 52 F.4th 349, 353 (7th Cir. 2022).
To support a prima facie case, a plaintiﬀ must show that “(1)
he is a member of a protected class; (2) he met his employer’s
8 No. 22-1593

legitimate job expectations; (3) he suﬀered an adverse em-
ployment action; and (4) similarly situated employees outside
of the protected class were treated more favorably.” Id. (inter-
nal quotation marks and alterations omitted) (quoting Naficy
v. Ill. Dep’t of Human Servs., 697 F.3d 504, 511 (7th Cir. 2012)).
 In the district court, it seemed that Wince was discussing
the evidence as a whole, as he was entitled to do under Ortiz.
But at some points it seemed that he was trying to use the
McDonnell Douglas approach. The problem with this is not the
failure to choose one of those two heuristics for the case—
there well may be more than two. It is instead that Wince
never presented any theory of the case that gathered the evi-
dence, organized it, and explained how and why a trier of fact
could conclude that it added up to race discrimination. The
district court complained about this, but Wince has not fixed
the problem on appeal. Instead, once again he has recited both
standards without specifying how either or both could sup-
port a finding of race discrimination. It was his burden to
proﬀer that evidence. We will, however, try to discern what
the record shows, both through the McDonnell Douglas lens
and through the Ortiz model, to ensure that Wince was not
wrongly deprived of a trial.
 Helpfully, the district court issued a well-reasoned opin-
ion that gave close attention to each of Wince’s discrimination
allegations. The court concluded that the record was devoid
of evidence showing that the incidents Wince spotlighted
were either racially motivated or linked to defendants’ con-
duct. Our own examination of the summary judgment mate-
rials satisfies us, too, that a reasonable factfinder could not re-
turn a verdict in Wince’s favor.
No. 22-1593 9

 Wince first asserts that CBRE failed to promote him to As-
sistant Chief Engineer in 2015 because he is Black. A failure to
promote can be a materially adverse employment action. See
Riley v. Elkhart Cmty. Schs., 829 F.3d 886, 892 (7th. Cir. 2016).
Using the burden-shifting approach, Wince’s first task was to
show that CBRE promoted a non-Black person who was not
better qualified for the position. See id.
 Wince proposes Brudniak, the White employee hired for
the Assistant Chief Engineer position at Lavin Family Pavil-
ion, as such a comparator. But there was no material diﬀer-
ence in the qualifications of the two men. Brudniak, like
Wince, was a licensed Stationary Engineer and held certifi-
cates in air conditioning, heating, and refrigeration. Wince al-
leges that he had a better educational background than
Brudniak because he held a bachelor’s degree, but there is no
evidence in the record showing that college education was ei-
ther required or relevant for the position. Crucially, Brudniak
was a lateral transfer, because he was already an Assistant
Chief Engineer in another wing of the hospital. In other
words, he had more relevant experience for the job. When the
position opened again in 2016, CBRE rehired Brudniak pre-
cisely because he knew the ins and outs of the post.
 In contrast, Wince had never worked as an Assistant Chief
Engineer. In fact, he had not progressed through CBRE’s pro-
motion order because he had never been a Lead Engineer. The
record shows only that Wince lost out to a qualified candi-
date. His attempt to make a prima facie case of discrimination
on this basis thus fails.
 Next we turn to Wince’s allegations that he was subjected
to racist slurs and discriminatory nicknames. “Conditions of
employment designed to harass and humiliate an employee
10 No. 22-1593

because she is a member of one of Title VII’s protected classes
may constitute an adverse employment action.” Hilt-Dyson v.
City of Chicago, 282 F.3d 456, 466 (7th Cir. 2002). But once
again, Wince’s evidentiary showing falls short.
 No one disputes Wince’s testimony that unknown people
wrote racist slurs on his lunchbox. This incident is appalling.
But an employer is not liable for coemployees’ racial harass-
ment if the plaintiﬀ fails to inform the employer that a prob-
lem exists. Hrobowski v. Worthington Steel Co., 358 F.3d 473, 478
(7th Cir. 2004); Durkin v. City of Chicago, 341 F.3d 606, 612–13
(7th Cir. 2003). For reasons undisclosed in the record, Wince
never reported the incident to any of his supervisors. And
there was no other evidence from which a trier of fact could
conclude that CBRE realized that this abuse had taken place.
The district court correctly held that the incident, troubling
though it was, could not form the basis of employer liability.
 Nor can the nickname to which Wince objected carry the
day for him. “Sly,” which Wince’s coworkers said was short
for Sylvester, is a nonracial name. And as soon as Wince
showed discomfort, his coworkers dropped its use. No trier
of fact could conclude, on this record, that the nickname was
“designed to harass and humiliate” Wince, much less in a ra-
cial way. See Hilt-Dyson, 282 F.3d at 466.
 Wince further contends that Saulig told him that he was
not liked and that Pierz told him that he did not have a future
in the company. But Saulig’s comment was at most rude or
unpleasant; “nothing … about [its] context suggests that [it
was] racially motivated.” See Brown v. Advocate S. Suburban
Hosp., 700 F.3d 1101, 1106 (7th Cir. 2012); see also Yancick v.
Hanna Steel Corp., 653 F.3d 532, 546 (7th Cir. 2011) (holding no
discrimination where coworker’s hostile and aggressive
No. 22-1593 11

attitude was not linked to racial animus). And Pierz’s com-
ment did not indicate imminent termination. To the contrary,
he encouraged Wince to look for other opportunities for im-
mediate promotion elsewhere and helped him obtain ap-
proval for a project management course. These race-neutral
remarks are not adverse actions.
 Finally, Wince’s latest allegations regarding work assign-
ments and the verbal warning meet a similar fate. His super-
visors assigned him to clean drains, which Wince argues was
a degrading trainee-task. His supervisors also reprimanded
him for failing to fulfill a work assignment. But cleaning
drains falls squarely within the duties of a Stationary Engi-
neer, which include all aspects of plumbing. And the verbal
reprimand did not come with a loss of pay or other tangible
consequence. See Boss v. Castro, 816 F.3d 910, 919 (7th Cir.
2016) (“Unfair reprimands or negative performance reviews,
unaccompanied by tangible job consequences, do not suﬃce”
for adverse employment action.). Neither requiring an em-
ployee to do his job nor scolding him amount to an adverse
action.
 Viewing the evidence as a whole, no reasonable factfinder
could find that CBRE or its employees discriminated against
Wince on the basis of his race. No tinge of race discrimination
attaches to CBRE’s choice of Brudniak for the Assistant Chief
Engineer position; Wince immediately succeeded in having
his coworkers stop calling him by the nickname that oﬀended
him; he was ordered to fulfill a task within his job duties; and
he was reprimanded for refusing to fulfill a job order. Wince
has not pointed to any evidence linking these episodes to ra-
cial animus. He once was subjected to racist slurs at his work-
place, but his failure to report the incident dooms that claim.
12 No. 22-1593

 B
 Wince also alleges that CBRE constructively discharged
him in violation of Illinois law. The district court granted
summary judgment in favor of defendants because Illinois
law does not recognize an independent cause of action for
constructive discharge. See Thomas v. Guardsmark, Inc., 381
F.3d 701, 708 (7th Cir. 2004) (“[T]he [Illinois Supreme Court]
‘has thus far declined to recognize a cause of action for retali-
atory constructive discharge.’”) (quoting Fisher v. Lexington
Health Care, Inc., 188 Ill. 2d 455, 467–68 (1999)). Wince’s failure
to address the basis of the court’s holding on appeal means he
has waived his claim.
 In any case, the district court considered the facts on which
Wince relies for this claim when it evaluated his evidence of
race discrimination. Wince argues that he faced an adverse
employment action through constructive discharge. That al-
legation was relevant to both discrimination and constructive
discharge. The court correctly held that Wince failed to carry
his burden for summary judgment purposes.
 A constructive discharge qualifies as an adverse employ-
ment action. It occurs when a plaintiﬀ is forced to resign be-
cause of unbearable working conditions. Chapin v. Fort-Rohr
Motors, Inc., 621 F.3d 673, 679 (7th Cir. 2010). Wince attempted
to prove constructive discharge through discriminatory har-
assment, which required him “to show working conditions
even more egregious than that required for a hostile work en-
vironment claim because employees are generally expected to
remain employed while seeking redress[.]” Id.
 As we explained earlier, the lunch box incident was the
only racist episode that finds support in the record. Although
No. 22-1593 13

severe, it was an isolated incident that did not repeat itself,
and Wince did not give CBRE the opportunity to redress it.
Indeed, it seems not to have rendered his working conditions
unbearable, because after it occurred Wince continued work-
ing at CBRE for another two or three years. He voluntarily
resigned only after securing a comparable job at another hos-
pital. On this record, no reasonable jury could conclude that
CBRE or its employees constructively discharged Wince.
 IV
 We AFFIRM the judgment of the district court.